Filed 10/21/13 Loudermilk v. County of Alameda CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANNISE L. LOUDERMILK,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF ALAMEDA et al.,<br><br>        Defendants and Respondents. | A135752<br><br>(Alameda County<br>Super. Ct. No. RG10534240) |

Annise L. Loudermilk appeals from a judgment dismissing her claims against her employer—the County of Alameda (County) and the Alameda County Probation Department (Department) (collectively County defendants)—and one of her supervisors, Patricia Lowe-Copeland.  The claims arose from Lowe-Copeland's alleged harassment of Loudermilk over a work-related dispute, and the County defendants' response when Loudermilk complained about the harassment.  We affirm the judgment as to the County defendants and dismiss Loudermilk's appeal as to the judgment in favor of Lowe-Copeland.

## I.  BACKGROUND

In her third amended complaint and in prior versions pertinent to this appeal, Loudermilk alleged the following material facts:

Loudermilk is employed by the County as a juvenile institutional officer for the Department.  Her duties include providing security, supervision, educational programs, and recreational activities for minors in the custody of juvenile hall.  Before the events giving rise to this action, Loudermilk received positive reviews during her employment

and her work performance had never been criticized. In the summer of 2008, Loudermilk developed an idea for a program in which outside guests would come to juvenile hall to speak with the minors about their experiences, and the presentations would be videotaped for viewing by detainees. Loudermilk presented the idea to one of her supervisors, Ms. Walters, who liked the idea and encouraged Loudermilk to develop the program.

When defendant Lowe-Copeland, who was also a supervisor of Loudermilk, found out Loudermilk was working with Walters on the project, she became enraged, and angrily challenged Loudermilk about why she chose to work with Walters rather than Lowe-Copeland. Lowe-Copeland called Loudermilk to her office, and interrogated her in a threatening manner, shouting angrily, "Somebody told you not to ask me." Loudermilk was intimidated and felt afraid and uncomfortable until she was finally allowed to leave Lowe-Copeland's office.

After this conversation, Lowe-Copeland's behavior toward Loudermilk became even more aggressive, assaultive, and threatening. She followed Loudermilk around, criticized her at every opportunity, and encouraged the detained minors to complain about Loudermilk. She told the juvenile detainees untruths about Loudermilk to turn them against her. She made promises to them and then changed her mind, causing them to become upset creating a troublesome and dangerous situation for Loudermilk. Many of the girls Loudermilk supervised had a history of violent behavior and the turmoil created by Lowe-Copeland caused Loudermilk to become concerned for her safety.

On or about November 8, 2008, Loudermilk met with her union shop steward and complained about the harassment and hostile work environment she was enduring from Lowe-Copeland. The shop steward told Loudermilk this was a management problem and had Loudermilk accompany her to a meeting with George Perkins, acting superintendent of the juvenile hall to inform him of Loudermilk's complaint concerning the harassment, hostile working environment, and retaliation she was enduring from Lowe-Copeland. Perkins said he would investigate and take care of the situation but never did so.

Loudermilk believed Lowe-Copeland must have learned of her complaint to Perkins because thereafter her threatening behavior increased and her anger toward

Loudermilk became more apparent. On March 3, 2009, Lowe-Copeland approached Loudermilk with an angry expression and threatened Loudermilk by stating, "[N]ow go and tell, you tell everything else." Lowe-Copeland turned to Loudermilk's coworker and said, "Yeah, that's how I get down." During another confrontation, Lowe-Copeland said to Loudermilk in a threatening manner, "I am from West Oakland." West Oakland is an area notorious for violent crime and frequent murders. In another instance, Lowe-Copeland told Loudermilk, "You'll regret it if you mess with me and if anyone does something to me they will regret it." These comments were made to Loudermilk in a threatening and intimidating manner and were clearly threats that frightened Loudermilk and made her fearful for her safety.

Lowe-Copeland also used the minors in Loudermilk's unit as a form of harassment and retaliation, making promises they could participate in certain programs and then changing her mind and making it appear it was Loudermilk's decision they could not participate. The minors had serious behavior issues including violence, drug use, and gang membership. During May 2009, Loudermilk felt so anxious, threatened, and victimized by Lowe-Copeland's harassment that she was constantly concerned for her personal safety, became physically ill, and missed work several times during the month. On June 4, 2009, Loudermilk complained again to Perkins in writing, naming witnesses to Lowe-Copeland's assaultive, harassing, and threatening conduct toward Loudermilk, but Lowe-Copeland continued to retaliate against and harass Loudermilk and the Department took no corrective action.

Loudermilk met again with Perkins about her complaints and Perkins asked her if she needed counseling. He referred her to a County counseling program for employees. Loudermilk began seeing a psychiatrist who diagnosed her with depression, anxiety, and emotional distress. Perkins never interviewed the witnesses Loudermilk identified to him.

On July 6, 2009, Loudermilk was placed on work-related disability leave by her primary care provider due to Lowe-Copeland's continuing threatening conduct and the failure of the Department to protect Loudermilk. A workers' compensation first report of

3

injury was filed by Loudermilk and her condition was described as work-related. The workers' compensation examiner approved Loudermilk's workers' compensation claim, stating her condition was work-related. In November 2009, after communication with management at the Department, the examiner reversed its coverage finding. As a result, Loudermilk was forced to use 80 hours of her own time and 40 hours of her sick leave for the period she was out on disability. Loudermilk alleges the adverse workers' compensation decision was made at the Department's request as part of the harassment, discrimination, and hostile work environment maintained against Loudermilk.

Loudermilk contacted Perkins when she was ready to return to work and requested the same 3:00 p.m. to 11:00 p.m. shift she had worked before going out on disability so long as Lowe-Copeland would not be her supervisor and she would have no contact with Lowe-Copeland. Perkins refused to move Lowe-Copeland to a different shift so that Loudermilk could return to her shift. He offered to put Loudermilk on the 7:00 a.m. to 3:00 p.m. shift, knowing she would receive approximately $2 more per hour on the later shift and that she was trying to attend school during the daytime. He could have moved Lowe-Copeland to a different shift because she is part of management and was not subject to the same work rules and benefits as union employees like Loudermilk.

After Loudermilk returned to work in November 2009, the internal affairs bureau (IAB) informed her the results of its investigation of Lowe-Copeland were negative. The IAB had not interviewed the witnesses whose names she had given to Perkins who would have confirmed Lowe-Copeland threatened Loudermilk in the workplace.

On January 8, 2010, within six months of the Department's transfer of Loudermilk to the less desirable shift, refusal to adequately investigate her complaint, and active advocacy against acceptance of her workers' compensation claim, Loudermilk filed a government tort claim with the County naming the Department as the party causing the loss or damage and stating: "I was working in a hostile work environment and being harassed by an IS II Supervisor." The claim was rejected on March 1, 2010, and this action was timely brought on August 31, 2010.

4

## *Trial Court Proceedings*

The trial court sustained demurrers to Loudermilk's first and second amended complaints, without leave to amend as to most causes of action. The two causes of action remaining in Loudermilk's third amended complaint were retaliation in violation of public policy and retaliation in violation of Labor Code section 6310.[1] Defendants demurred again. The trial court sustained the demurrer to the cause of action based on public policy without leave to amend. The section 6310 cause of action was based on Loudermilk's allegation she was transferred to a shift on which she earned $2 less per hour, as retaliation for her complaints about Lowe-Copeland and her workers' compensation claim. Finding no facts alleged demonstrating defendant Lowe-Copeland had any role in the shift transfer, the trial court sustained her demurrer to the section 6310 cause of action without leave to amend, and denied the County defendants' demurrer. The County defendants answered and filed a motion for judgment on the pleadings, which the trial court granted on the grounds that the factual basis for Loudermilk's section 6310 retaliation claim was not fairly reflected in the tort claim filed with the County on January 8, 2010. Loudermilk filed a notice of appeal from the ensuing

---

[1] Part of the Occupational Health and Safety Act (Lab. Code, § 6300 et seq.), Labor Code section 6310 bars retaliation against employees who report workplace safety issues: "(a) No person shall discharge or in any manner discriminate against any employee because the employee has done any of the following: [¶] (1) Made any oral or written complaint to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, his or her employer, or his or her representative. [¶] (2) Instituted or caused to be instituted any proceeding under or relating to his or her rights or has testified or is about to testify in the proceeding or because of the exercise by the employee on behalf of himself, herself, or others of any rights afforded him or her. [¶] . . . [¶] (b) Any employee who is . . . demoted . . . or in any other manner discriminated against in the terms and conditions of employment by his or her employer because the employee has made a bona fide oral or written complaint to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, his or her employer, or his or her representative, of unsafe working conditions, or work practices, in his or her employment or place of employment . . . shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer."

judgment of dismissal, and from the three earlier orders sustaining demurrers to her other causes of action without leave to amend. (See Code Civ. Proc., § 472c, subdivision (b)(1).)

Loudermilk contends the trial court erred in dismissing without leave to amend the following causes of action, as pleaded in her second and third amended complaints: (1) retaliation in violation of public policy (third amended complaint), (2) retaliation in violation of Labor Code section 6310 (third amended complaint), and (3) violation of Labor Code section 6400[2] (second amended complaint).

## II. DISCUSSION

### A. *Standard of Review*

An appellate court reviews a ruling sustaining a demurrer de novo, exercising independent judgment regarding whether the complaint states a cause of action as a matter of law without regard to whether the plaintiff will have difficulties proving the claims made in the complaint. (*Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1115.) We give the complaint a reasonable interpretation, treating the demurrer as admitting all material facts properly pleaded, but we do not assume the truth of contentions, deductions, or conclusions of law. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

On appeal from a judgment on the pleadings, we apply the same standard of review as with a general demurrer. (*Baughman v. State of California* (1995) 38 Cal.App.4th 182, 187.) "[W]e accept as true the facts alleged in the complaint and review the legal issues de novo. 'A motion for judgment on the pleadings, like a general demurrer, tests the allegations of the complaint or cross-complaint, supplemented by any matter of which the trial court takes judicial notice, to determine whether plaintiff or cross-complainant has stated a cause of action. [Citation.] Because the trial court's determination is made as a matter of law, we review the ruling de novo, assuming the

---

[2] Labor Code section 6400, subdivision (a) states: "Every employer shall furnish employment and a place of employment that is safe and healthful for the employees therein."

6

truth of all material facts properly pled.' " (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 166.)

**B.** *Retaliation in Violation of Public Policy*

Loudermilk's cause of action for retaliation in violation of public policy alleged in relevant part that at the time of the events alleged in the complaint: "Section 132a of the Labor Code[3] protected workers from retaliation, discrimination and harassment as a result of reporting a work related injury . . . . [and] the County . . . had adopted a [written] workplace violence prevention policy . . . which prohibited all types of violent behavior in the workplace, including . . . threat of violence and intimidation . . . . to be followed by all employees of Alameda County." The cause of action further alleged the Department engaged in retaliatory conduct toward Loudermilk by its "refusal to act and its misrepresentations to Plaintiff that it would investigate her complaint when Defendants knew, or should have known, that it would place Plaintiff in a position where she would be subjected to further threats of violence by [Lowe-Copeland] . . . ." Loudermilk sought general damages for emotional distress, economic damages, and special damages according to proof, as well as attorney fees.

The trial court sustained defendants' demurrer to this cause of action without leave to amend because (1) the WCAB is the exclusive forum for pursuing a Labor Code section 132a claim; (2) to the extent the cause of action is based on another unspecified public policy, or common law, the claim failed since claims against public entities must

---

[3] Labor Code section 132a provides in relevant part: "It is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment. [¶] (1) [If] [a]ny employer . . . in any manner discriminates against any employee because he or she has filed . . . a claim for [workers'] compensation with his or her employer[,] . . . the employee's compensation shall be increased by one-half, but in no event more than ten thousand dollars ($10,000), together with costs and expenses not in excess of two hundred fifty dollars ($250). Any such employee shall also be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer." Section 132a further specifies such issues are to be adjudicated by the Workers' Compensation Appeals Board (WCAB), which "is vested with full power, authority, and jurisdiction" to decide them, subject to judicial review.

be based on statute, not common law or general public policy not expressly stated in statute; and (3) as to defendant Lowe-Copeland, Loudermilk alleged no facts demonstrating she had any role in the retaliatory conduct alleged—Loudermilk's shift transfer.

Loudermilk contends the court erred in holding her claim is subject to the exclusive jurisdiction of the workers' compensation system, citing *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143 (*Moorpark*). The plaintiff in *Moorpark* attempted to return to work after knee surgery. (*Id.* at pp. 1148–1149.) Her employer terminated her employment, informing her that her residual disability prevented her from performing essential job functions. (*Ibid.*) She sued, alleging causes of action for discrimination in violation of the Fair Employment and Housing Act (Gov. Code, § 12940 et seq.; FEHA) and wrongful termination in violation of public policy, among other claims. (*Moorpark*, at p. 1149.) The defendants demurred in part on the grounds that since the plaintiff's disability was work-related, a workers' compensation proceeding under Labor Code section 132a—which she was also pursuing—was the plaintiff's exclusive remedy. (*Moorpark*, at p. 1149.) The Supreme Court held section 132a is not an exclusive remedy for workplace disability discrimination and does *not* preclude an employee with a work-related disability from pursuing remedies for wrongful termination based on disability discrimination under the FEHA or common law. (*Moorpark*, at p. 1158.) The Supreme Court stated in *Moorpark*: "[A Labor Code] section 132a violation, like sexual and racial discrimination, falls outside the compensation bargain, and workers' compensation is not the exclusive remedy." (*Id.* at p. 1155.)

Although the employer in *Moorpark* was a public entity, the issue of whether a cause of action for disability discrimination based on public policy, known as a *Tameny* claim,[4] would be subject to a public entity's tort immunity under Government Code

---

[4] *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 (*Tameny*) held that if an employer's discharge of an employee violated fundamental principles of public policy the employee could maintain a tort action against the employer. (*Id.* at p. 170.) The Supreme Court later clarified that a *Tameny* cause of action must be "carefully tethered to

section 815[5] was not raised or decided in that case. (See *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 900, fn. 7 (*Miklosy*).) *Miklosy* held that Government Code section 815 bars *Tameny* actions against public entities.

Loudermilk submits her public policy retaliation claim—which she characterizes as a claim for retaliation in violation of public policy "based . . . on the public policy embodied in Labor Code §132a"—is not precluded by the workers' compensation law. The problem with such a claim is that Government Code section 815 bars it to the extent it is not otherwise precluded by the workers' compensation law. Section 815 would have permitted Loudermilk to seek Labor Code section 132a remedies against the County defendants *in a workers' compensation proceeding* because such a claim is authorized by statute, namely, Labor Code section 132a. But Government Code section 815 does not permit her to fashion a *Tameny*, public policy *tort* claim out of her grievances and pursue such a claim in a court proceeding. Section 815, as construed by our Supreme Court in *Miklosy*, bars any such claim.

Loudermilk's public policy-based retaliation claim fails for a second reason. Even assuming for the sake of analysis that Government Code section 815 did not bar her *Tameny* claim, Labor Code section 132a does not provide the necessary statutory basis for such a claim, as the Court of Appeal specifically held in *Dutra v. Mercy Medical Center Mt. Shasta* (2012) 209 Cal.App.4th 750 (*Dutra*). *Dutra* described the test required by *Tameny* and subsequent cases: "[F]or a [public] policy to support a common law cause of action, '[t]he policy "must be: (1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public'

fundamental policies that are delineated in constitutional or statutory provisions." (*Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1095.)

[5] Government Code section 815 immunizes public entities from all forms of common law tort liability except as required by the state or federal Constitution or declared by statute: "Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person. . . ."

9

rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental." [Citations.] " '[P]ublic policy' as a concept is notoriously resistant to precise definition, and . . . courts should venture into this area, if at all, with great care . . . .' [Citation.] Therefore, *when the constitutional provision or statute articulating a public policy also includes certain substantive limitations in scope or remedy, these limitations also circumscribe the common law wrongful discharge cause of action.* Stated another way, the common law cause of action cannot be broader than the constitutional provision or statute on which it depends, and therefore it "presents no impediment to employers that operate within the bounds of law." ' " (*Dutra*, at pp. 755–756, italics added by *Dutra*.)

With respect to Labor Code section 132a, *Dutra* held as follows: "Section 132a includes limitations on its scope and remedy that prevent it from being the basis of a common law cause of action. The statute establishes a specific procedure and forum for addressing a violation. It also limits the remedies that are available once a violation is established. Allowing plaintiff to pursue a tort cause of action based on a violation of section 132a would impermissibly give her broader remedies and procedures than those provided by the statute. Thus, the statute cannot serve as the basis for a tort claim of wrongful termination in violation of public policy . . . ." (*Dutra, supra,* 209 Cal.App.4th at p. 756.)

We agree with *Dutra*'s reasoning and find that it independently bars the claim in issue. We also reject Loudermilk's claim the trial court should have allowed her to amend her third amended complaint "to allege a direct, statutory cause of action for retaliation under Labor Code §132a." Subject to judicial review, the exclusive forum for prosecuting such a claim is the WCAB. (Lab. Code, § 5300, subd. (b);[6] *Moorpark*, *supra*, 18 Cal.4th at pp. 1155–1156 [Lab. Code, § 5300 establishes the WCAB as the

---

[6] Labor Code section 5300, subdivision (a) provides that all proceedings "[f]or the recovery of compensation, or concerning any right or liability arising out of or incidental thereto" shall be instituted before the WCAB.

10

exclusive forum for pursuing a § 132a claim]; *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 817.)

**C. *Violation of Labor Code Section 6310 (County)***

Following the sustaining, in part, of defendants' demurrer to her third amended complaint, Loudermilk was left with a single cause of action for violation of Labor Code section 6310 against the County defendants. The remaining cause of action alleged Loudermilk was subjected to retaliatory conduct for making "bona fide complaints" to the County, the Department, the WCAB, and a state agency "regarding the harassment, retaliation, assault and threat of assault against her" by Lowe-Copeland. The retaliatory conduct alleged was her (1) transfer to a "shift in which she would be required to have contact with [Lowe-Copeland]," and (2) her assignment "to the 7:00 a.m.–3:00 p.m. shift which resulted in a pay cut of approximately $2.00 more an hour [and] also impacted [Loudermilk's] ability to continue to attend school." Loudermilk further alleged "[t]his retaliatory conduct adversely impacted [her] employment, depriving [her] of various assignments and opportunities for promotion to [her] detriment both financially and in advancing her career and caused her further emotional distress." The trial court granted the County defendants' motion for judgment on the pleadings, and dismissed this cause of action on the grounds that Loudermilk had not complied with the claims presentation requirement of Government Code section 945.4[7] with respect to her Labor Code section 6310 retaliation claim. The court agreed with the County defendants' contention that the claim Loudermilk filed on January 8, 2010 solely raised the issues of hostile work environment and harassment, and included no reference to retaliation.

"[Government Code] section 945.4 requires each cause of action to be presented by a claim complying with section 910, while section 910, subdivision (c) requires the

---

[7] With exceptions not relevant here, Government Code section 945.4 provides that "no suit for money or damages may be brought against a public entity . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board . . . ." Such claim must be presented not later than six months after accrual of the cause of action. (Gov. Code, § 911.2, subd. (a); *State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1239.)

claimant to state the 'date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted.' If the claim is rejected and the plaintiff ultimately files a complaint against the public entity, the facts underlying each cause of action in the complaint must have been fairly reflected in a timely claim. [Citation.] '. . . [T]he complaint is vulnerable to a demurrer if it alleges a factual basis for recovery which is not fairly reflected in the written claim.' " (*Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Authority* (2004) 34 Cal.4th 441, 447 (*Stockett*).) Thus, although the complaint may elaborate or add further detail to a claim, it must be "predicated on the same fundamental actions or failures to act by the defendants." (*Ibid.*) The purpose of the claim is to present sufficient detail "to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 456.)

In *Stockett*, the plaintiff's notice of tort claim alleged he had been wrongfully terminated in violation of public policy for supporting another employee's sexual harassment claim. (*Stockett, supra*, 34 Cal.4th at p. 444.) The trial court allowed Stockett to amend his complaint to allege he had been terminated in violation of public policy on additional grounds, including his free speech right to speak out against certain unrelated practices of his employer. (*Id.* at pp. 444–445.) Following a jury verdict in Stockett's favor, the employer contended the court erred by allowing Stockett to present a different case than one based solely on retaliation for objecting to sexual harassment. (*Id.* at p. 445.) The Supreme Court rejected this argument, finding the amended complaint "alleged liability on the same wrongful act, his termination, as was stated in his notice of claim," and that it "simply elaborated and added detail to [Stockett's] wrongful termination claim by alleging additional motivations and reasons for [the employer's] single action of wrongful termination." (*Id.* at p. 448.)

Loudermilk submits her Labor Code section 6310 claim met the fair notice standards required by *Stockett*. She emphasizes her claim stated she was working in a hostile work environment *as well as* being harassed by a supervisor. In response to the form question asking her for the "Name of Public Employee(s) Causing

12

Injury/Damage/Loss," she wrote "Alameda County probation Department," and did not name Lowe-Copeland anywhere on the claim form.  Loudermilk asserts the County was therefore on notice (1) she was complaining of working in a hostile work environment and (2) the Department was the wrongdoer.  She further asserts the hostile work environment she complained of encompassed the Department's refusal to investigate her complaint or discipline Lowe-Copeland, its transfer of her to a less desirable shift with less pay, its alleged advocacy against her workers' compensation claim, and its alleged threat to place her back under Lowe-Copeland's supervision, *and* that the third amended complaint alleged *all* of these actions were done in retaliation for her exercising her right to complain about an unsafe work environment, in violation of Labor Code section 6310.

We simply do not read the retaliation cause of action as Loudermilk does.  She did not allege every act and omission by the County defendants with respect to her was in retaliation for her complaints of unsafe working conditions.  The retaliation claim was premised on her shift assignments, not on the County defendants' failure to stop Lowe-Copeland's harassment or its alleged interference with her workers' compensation claim. Loudermilk's notice asserted liability stemming from different wrongful acts and causes than her retaliation claim—leaving her exposed to hostile working conditions, not offering her a less desirable shift where she earned less money and could not go to school.  And her retaliation claim was premised on a wholly different theory of liability against her employer than her claim notice—acts intended to punish her for complaining, not acts or omissions subjecting her to a hostile work environment.  Thus, Loudermilk's notice would have caused the County to investigate Lowe-Copeland's conduct toward Loudermilk, its severity and pervasiveness, its effect on Loudermilk and her work environment, and whether the Department acted promptly to end it if it had occurred. (See *Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 141–142.)  It would not reasonably have led the County to investigate whether the Department retaliated against Loudermilk for making a workplace safety complaint.  (Cf. *Stockett*, *supra,* 34 Cal.4th at p. 449 [a reasonable investigation of a wrongful termination claim would not have been limited to the motive hypothesized in the complainant's claim form].)  We agree with the

13

trial court that Loudermilk's claim form did not fairly put the County on notice of a claim under Labor Code section 6310.

## D. *Violation of Labor Code Section 6310 (Lowe-Copeland)*

The trial court sustained Lowe-Copeland's demurrer to Loudermilk's Labor Code section 6310 cause of action on the grounds Loudermilk failed to allege facts showing Lowe-Copeland had any role in the retaliatory conduct alleged—the shift transfer. Loudermilk contends the trial court erred in focusing on the shift transfer as the sole act of retaliation. She maintains she sufficiently alleged a course of threatening, retaliatory conduct by Lowe-Copeland in response to her workplace safety complaints.

We need not reach the merits of Loudermilk's claims. Code of Civil Procedure section 581d states in relevant part as follows: "All dismissals ordered by the court shall be in the form of a written order signed by the court and filed in the action and *those orders when so filed shall constitute judgments* and be effective for all purposes, and the clerk shall note those judgments in the register of actions in the case." (Italics added.) In this case, the trial court signed and entered a written order stating, "Defendant Patricia Lowe-Copeland is DISMISSED from this action" on January 6, 2012. We find the January 6 order dismissing Lowe-Copeland was an appealable order. An order sustaining a demurrer and dismissing the case as to a particular defendant is an appealable order. (*Hudis v. Crawford* (2005) 125 Cal.App.4th 1586, 1590, fn. 4.) "[A]n order of dismissal is to be treated as a judgment for the purposes of taking an appeal when it finally disposes of the particular action and prevents further proceedings as effectually as would any formal judgment." (*Daar v. Yellow Cab Co*. (1967) 67 Cal.2d 695, 699.) The January 6 order finally disposed of the action as to Lowe-Copeland and prevented further proceedings against her as fully as would any judgment in her favor.

We reject Loudermilk's contention that such an order cannot constitute a judgment unless and until the clerk also designates it as a judgment in the register of actions in the case. Under the plain language of Code of Civil Procedure section 581d, the dismissal order is effective as a judgment when it is *filed*, not when the clerk notes it as such in the register of actions. Loudermilk fails to explain how written dismissal orders could

14

become effective as judgments under her interpretation of section 581d in superior courts that opt not to maintain registers of actions. (See Gov. Code, § 69845; *Ten Eyck v. Industrial Forklifts Co.* (1989) 216 Cal.App.3d 540, 544.) The statute must be construed consistently with the rule that "[o]nce a judgment is filed with the clerk, it is entered, and no subsequent action is required to effect entry of judgment." (*County of Los Angeles v. Ranger Ins. Co.* (1994) 26 Cal.App.4th 61, 65.)

Notice of entry of the January 6 order was served on March 1, 2012. Loudermilk's notice of appeal— filed more than 60 days thereafter—was therefore untimely as to Lowe-Copeland. (Cal. Rules of Court, rule 8.104(a)(1)(B).) Loudermilk's appeal as to Lowe-Copeland must be dismissed.

Having afforded the parties an opportunity to file supplemental briefs on this issue, we dismiss Loudermilk's appeal from the judgment in favor of Lowe-Copeland.

Were we to consider the issue on the merits, we would read Loudermilk's Labor Code section 6310 cause of action as the trial court did. It alleges retaliation based on the decision to transfer Loudermilk to a less desirable shift after she returned from her disability leave. No facts are pleaded showing Lowe-Copeland was involved in making that decision. Although Loudermilk alleged Lowe-Copeland engaged in retaliation toward her, she never specifically alleged Lowe-Copeland was retaliating for Loudermilk's complaint of unsafe working conditions. The third amended complaint pleads facts showing Lowe-Copeland was retaliating against Loudermilk because she was angered by Loudermilk's choice to work with Ms. Walters. Loudermilk characterizes Lowe-Copeland's conduct as retaliatory before she complained to management about it. Although Loudermilk alleged Lowe-Copeland's conduct worsened after her complaint was lodged, the operative paragraphs of the section 6310 cause of action do not allege an actionable linkage between Lowe-Copeland's conduct and Loudermilk's safety complaint.

Therefore, even assuming Loudermilk's appeal concerning the dismissal of her last remaining cause of action against Lowe-Copeland was timely, the trial court did not err in dismissing it.

15

**E.** *Violation of Labor Code Section 6400*

In her second amended complaint, Loudermilk alleged that by not protecting her "against [Lowe-Copeland's] workplace violence and harassment," the County defendants failed to provide her with a safe and healthful place of employment and violated Labor Code section 6400. She alleged she suffered economic and emotional distress damages and was required to seek medical and mental health treatment for a work-related injury as a result of the violation. The trial court sustained the County defendants' demurrer to this cause of action without leave to amend on the grounds Loudermilk failed to plead any facts showing the claim fell within any legally recognized exception to the general rule that actions by an employee against an employer for workplace injuries are within the exclusive province of the workers' compensation system.

Labor Code section 3602, subdivision (a) provides that where certain conditions exist the right to recover workers' compensation remedies is the employee's sole and exclusive remedy against the employer. This reflects the legislative compromise at the core of the workers' compensation system: "[T]he employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort." (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 16 (*Shoemaker*).) One recognized exception to workers' compensation exclusivity is where the employer steps out of its proper role and exposes the employee to a risk beyond that "reasonably encompassed within the compensation bargain." (*Id.* at pp. 16–17.) Loudermilk submits her Labor Code section 6400 claim comes within this exception because she alleges outrageous conduct by Lowe-Copeland including outright threats of violence and intimidation.

Setting aside the characterizations and labels Loudermilk uses in describing Lowe-Copeland's conduct (e.g., assaultive) and focusing on the facts she alleges, it is apparent this case does not come within the exception to exclusivity recognized in *Shoemaker*. She alleges Lowe-Copeland interrogated and shouted at her on one occasion, followed

16

her around and criticized her work, contrived to get some of the detainees mad at her, and made statements in her presence that Loudermilk took as implied threats to her safety. This is not enough to avoid the Labor Code's exclusivity provisions: "[W]hen the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability." (*Cole v. Fair Oaks Fire Protection Dist*. (1987) 43 Cal.3d 148, 160.) Discipline and criticism are normal parts of the employment relationship; even if such conduct may be characterized as intentional, unfair or outrageous, it is covered by the workers' compensation exclusivity provisions. (*Shoemaker*, *supra*, 52 Cal.3d at p. 25.) As the trial court observed, this case involves no allegations of violent or coercive criminal conduct of a kind that has been found to fall outside the bounds of a normal employment relationship. (See *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund, supra*, 24 Cal.4th 800, 822, and cases cited therein.)

The trial court did not err in dismissing Loudermilk's Labor Code section 6400 claim.

## III.  DISPOSITION

The judgment is affirmed as to the County defendants, and the appeal is dismissed as to defendant Lowe-Copeland.

_____
Margulies, Acting P.J.

We concur:

_____
Dondero, J.

_____
Banke, J.