[No. S108220. Nov. 1, 2004.]

JERRY STOCKETT et al., Plaintiffs and Respondents, v.
ASSOCIATION OF CALIFORNIA WATER AGENCIES JOINT POWERS
INSURANCE AUTHORITY, Defendant and Appellant.
JERRY STOCKETT et al., Plaintiffs and Appellants, v.
ASSOCIATION OF CALIFORNIA WATER AGENCIES JOINT POWERS
INSURANCE AUTHORITY, Defendant and Respondent.

## COUNSEL

Horvitz & Levy, Peter Abrahams, Sandra J. Smith, Nina E. Scholtz; Matheny, Sears, Linkert & Long, Michael Bishop and Mary E. Wood for Defendant and Appellant.

Eisen & Johnston, Jay-Allen Eisen, Marian M. Johnston, Frederic L. Snowden; Wilcoxen, Callahan, Montgomery & Deacon, Callahan & Deacon, Gary B. Callahan and Ted Deacon for Plaintiffs and Respondents.

## OPINION

**WERDEGAR, J.**—The question presented is whether a dismissed government employee is precluded under the Tort Claims Act (Gov. Code, § 810 et seq.) from asserting, in a complaint for wrongful termination, theories of illegal motivation that were not specified in the required notice of claim. We conclude the claimant is not barred from asserting additional wrongful dismissal theories in his complaint where, as here, the notice of claim informs the public entity of the employment termination cause of action giving rise to the claim and provides sufficient detail for investigation by the public entity. We therefore reverse the Court of Appeal.

FACTUAL AND PROCEDURAL BACKGROUND

The Association of California Water Agencies Joint Powers Insurance Authority (JPIA) is a public agency that provides insurance and risk management services to nearly 300 public water agencies in California. Plaintiff Jerry Stockett was the general manager of JPIA from 1983 until his termination on August 25, 1995. Under the terms of his 1992 employment contract, he was an at-will employee. Stockett was terminated by JPIA's Executive Committee (the committee) after it discussed his job performance in a closed session meeting. Stockett asked Warren Buckner, president of the committee, why he had been terminated, but Buckner said the committee was unwilling to disclose its reasons.

Stockett presented a notice of tort claim to JPIA, alleging he had been wrongfully terminated. The claim stated that Stockett was terminated for supporting a female employee's sexual harassment complaints against William G. Malone, JPIA's insurance broker, which harassment was in violation of the Fair Employment and Housing Act and the public policy of the State of California; that Stockett became aware that members of the committee and Malone had purchased insurance without determining that the insurer provided the lowest price or value to its members, and refused to select a provider through a competitive bidding process; and that Malone and some members of the committee, learning that Stockett was considering soliciting other bids, conspired to induce the committee to terminate Stockett by meeting secretly and making false charges against him.

Stockett's notice of claim stated he was wrongfully terminated on August 25, 1995, after the committee held a closed session meeting. It asserted that Buckner (the committee president), Wes Bannister (the vice-president), Malone (JPIA's insurance broker and consultant), Daniel Klaff (the assistant general manager) and other unknown parties caused his injury, and identified Malone as the instigator of the action through his close ties with Buckner, Bannister and Klaff.

After JPIA denied Stockett's claim, Stockett and his wife, Judith Stockett (collectively Stockett), filed this lawsuit against JPIA. Stockett later moved to amend his complaint to allege he had been terminated in violation of public policy on three grounds: (1) opposing sexual harassment by Malone in the workplace; (2) objecting to a conflict of interest involving Malone's dual role as both JPIA's insurance consultant and a vendor of insurance products to JPIA; and (3) exercising his First Amendment right of free speech by objecting to JPIA's practice of not having its insurance purchased on the open market through an open bid process, which was in the best interests of JPIA's member agencies. JPIA unsuccessfully opposed Stockett's motion to

amend the complaint, claiming the facts in the amended complaint had not been set forth in the government tort claim. At trial, Stockett also argued he had been terminated for exercising his free speech rights when he made statements to Smart's California Workers' Compensation Bulletin (Smart's), an insurance industry newsletter, to the effect that JPIA's workers' compensation insurer was selling insurance below cost.

JPIA again raised the issue of variance between Stockett's claim and his theories of liability in a motion for nonsuit, which the trial court denied. Ultimately, the court instructed the jury on three public policies that JPIA was alleged to have violated. The jury was told: (1) an employer shall not terminate an employee in retaliation for disclosing a practice that violates the conflict of interest provisions of the Political Reform Act; a conflict of interest exists when a public official makes, participates in making, or attempts to influence a governmental decision in which he knows he has a financial interest; (2) an employer shall not terminate an employee in retaliation for opposing sexual harassment as prohibited by the Fair Employment and Housing Act; and (3) an employer shall not terminate an employee in retaliation for the exercise of the employee's free speech rights protected by the First Amendment to the United States Constitution; the First Amendment protects the right to speak out on matters of public concern.

The jury returned a verdict in Stockett's favor, awarding him about $4.5 million in damages. On JPIA's appeal, the Court of Appeal reversed the resulting judgment, holding that "[b]y allowing the conflict of interest and free speech theories to be presented to the jury, the trial court allowed the Stocketts to present a very different case than one based solely on retaliation for objection to sexual harassment."

### DISCUSSION

Government Code section 945.4[1] provides that "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with . . . Section 910 . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board . . . ." Section 910, in turn, requires that the claim state the "date, place, and other circumstances of the occurrence or transaction which gave rise to the claim asserted" and provide "[a] general description of the . . . injury, damage or loss incurred so far as it may be known at the time of presentation of the claim."[2]

---

[1] All further statutory references are to the Government Code.

[2] Section 910 provides in full: "A claim shall be presented by the claimant or by a person acting on his or her behalf and shall show all the following:

■ The purpose of these statutes is "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 455 [115 Cal.Rptr. 797, 525 P.2d 701].) Consequently, a claim need not contain the detail and specificity required of a pleading, but need only "fairly describe what [the] entity is alleged to have done." (*Shoemaker v. Myers* (1992) 2 Cal.App.4th 1407, 1426 [4 Cal.Rptr.2d 203]; *Turner v. State of California* (1991) 232 Cal.App.3d 883, 888 [284 Cal.Rptr. 349].) As the purpose of the claim is to give the government entity notice sufficient for it to investigate and evaluate the claim, not to eliminate meritorious actions (*Blair v. Superior Court* (1990) 218 Cal.App.3d 221, 225 [267 Cal.Rptr. 13]), the claims statute "should not be applied to snare the unwary where its purpose has been satisfied" (*Elias v. San Bernardino County Flood Control Dist.* (1977) 68 Cal.App.3d 70, 74 [135 Cal.Rptr. 621]).

The parties disagree as to whether Stockett's tort claim provided JPIA with sufficient notice of two wrongful termination theories Stockett asserted at trial: that he was fired for opposing Malone's conflict of interest, and that he was fired for exercising the right to free speech in his statements to Smart's. JPIA argues that Stockett's claim was insufficient under section 910, subdivision (c) to support the new theories. Stockett contends he is not precluded from raising additional reasons at trial for his termination because he was not required, in order to comply with section 910, to claim more than that JPIA's agents wrongfully terminated him, while giving the basic circumstances of that occurrence. We agree with Stockett that his claim was sufficient under the Tort Claims Act to give JPIA notice of all theories of wrongful termination.

"(a) The name and post office address of the claimant.

"(b) The post office address to which the person presenting the claim desires notice to be sent.

"(c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted.

"(d) A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim.

"(e) The name or names of the public employee or employees causing the injury, damage or loss, if known.

"(f) The amount claimed if it totals less than ten thousand dollars ($10,000) as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed. If the amount claimed exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim. However, it shall indicate whether the claim would be a limited civil case."

■ As noted above, section 945.4 requires each cause of action to be presented by a claim complying with section 910, while section 910, subdivision (c) requires the claimant to state the "date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted." If the claim is rejected and the plaintiff ultimately files a complaint against the public entity, the facts underlying each cause of action in the complaint must have been fairly reflected in a timely claim. (*Nelson v. State of California* (1982) 139 Cal.App.3d 72, 79 [188 Cal.Rptr. 479].) "[E]ven if the claim were timely, the complaint is vulnerable to a demurrer if it alleges a factual basis for recovery which is not fairly reflected in the written claim." (*Ibid.*)

■ The claim, however, need not specify each particular act or omission later proven to have caused the injury. (*Blair v. Superior Court, supra,* 218 Cal.App.3d at p. 225.) A complaint's fuller exposition of the factual basis beyond that given in the claim is not fatal, so long as the complaint is not based on an "entirely different set of facts." (*Stevenson v. San Francisco Housing Authority* (1994) 24 Cal.App.4th 269, 278 [29 Cal.Rptr.2d 398].) Only where there has been a "complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim" have courts generally found the complaint barred. (*Blair v. Superior Court, supra,* at p. 226.) Where the complaint merely elaborates or adds further detail to a claim, but is predicated on the same fundamental actions or failures to act by the defendants, courts have generally found the claim fairly reflects the facts pled in the complaint. (*White v. Superior Court* (1990) 225 Cal.App.3d 1505, 1510–1511 [275 Cal.Rptr. 706].)

■ Stockett's claim complied with sections 910 and 945.4. He stated the date and place of his termination, named those JPIA officers and agents he believed responsible, and generally stated the "circumstances" (§ 910, subd. (c)) of his termination. In addition, he stated the termination had been wrongful because it was effected in violation of California public policy. He thus notified JPIA of his wrongful termination cause of action, in compliance with section 954.4's command that each "cause of action" be presented by notice of claim. While Stockett's claim did not specifically assert his termination violated the public policies favoring free speech and opposition to public employee conflicts of interest, these theories do not represent additional causes of action and hence need not be separately presented under section 945.4.[3]

---

[3] JPIA acknowledged at trial, and does not argue otherwise in its briefs, that under the primary right analysis used in California law (see 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, §§ 24–26, pp. 85–88), Stockett's claim of dismissal in violation of public policy constitutes only a single cause of action even though his dismissal allegedly violated several public policies.

Unlike *Fall River v. Superior Court* (1988) 206 Cal.App.3d 431 [253 Cal.Rptr. 587], which JPIA cites as illustrating a fatal variance between a plaintiff's claim and complaint, the additional theories pled in Stockett's amended complaint did not shift liability to other parties or premise liability on acts committed at different times or places. In *Fall River*, the plaintiff was injured at school when a steel door struck his head. His notice of claim stated the injury was caused by the school's negligent maintenance of the door, but his complaint additionally alleged the school had negligently failed to supervise students engaged in horseplay. (*Id.* at pp. 433–434.) The court held the factual divergence between claim and complaint was too great; the complaint alleged liability "on an entirely different factual basis than what was set forth in the tort claim." (*Id.* at 435.)[4] Stockett's complaint, in contrast, alleged liability on the same wrongful act, his termination, as was stated in his notice of claim.

Nor were the fundamental facts underlying Stockett's claim changed in his amended complaint. Rather, the free speech and conflict of interest theories simply elaborated and added detail to his wrongful termination claim by alleging additional motivations and reasons for JPIA's single action of wrongful termination. This case is thus similar to previous cases holding that the claim fairly reflected the theories of liability set forth in the complaint. In *Blair v. Superior Court, supra*, 218 Cal.App.3d 221, for example, the plaintiff, a passenger, was injured when the driver lost control of his vehicle on a highway and collided with a tree. His claim stated the state had negligently constructed and maintained the highway surface, particularly by failing to sand it to prevent icing, whereas the complaint alleged the state had failed to provide warning signs and a guardrail on the highway. (*Id.* at pp. 223–224.) The appellate court stated the general claim of "negligent construction" could "reasonably be read to encompass defects in the placement of highway guard rails . . . or inadequate warning signs," and the plaintiff was not obliged to specify in his notice of claim his particular theories of negligence. (*Id.* at p. 226.) The claim and complaint were based on the same foundation: "because of its negligent construction or maintenance, the highway at the scene of the accident constituted a dangerous condition of public property." (*Ibid.*)[5] Stockett's

---

[4] See also, e.g., *Lopez v. Southern Cal. Medical Group* (1981) 115 Cal.App.3d 673, 676–677 [171 Cal.Rptr. 527] (claim alleging the state negligently *issued* a driver's license to defendant despite his epileptic condition was insufficient to allow amended complaint alleging the state *neglected to suspend or revoke* license despite defendant's failure to comply with accident reporting and financial responsibility laws); *Donohue v. State of California* (1986) 178 Cal.App.3d 795, 803–804 [224 Cal.Rptr. 57] (claim alleging the Department of Motor Vehicles negligently *allowed an uninsured motorist to take a driving test* did not give adequate notice of complaint's allegation that the department negligently *supervised and instructed* the driver during the driving exam).

[5] See also, e.g., *Shoemaker v. Myers, supra*, 2 Cal.App.4th at page 1426 (state health investigator's claim that his dismissal from government employment was an interference with

claim and complaint, similarly, are based on the same factual foundation, viz., that certain named JPIA agents wrongfully terminated him.

In comparing claim and complaint, "we are mindful that '[s]o long as the policies of the claims statutes are effectuated, [the statutes] should be given a liberal construction to permit full adjudication on the merits.' " (*Smith v. County of Los Angeles, supra,* 214 Cal.App.3d at p. 280, quoting *Minsky v. City of Los Angeles* (1974) 11 Cal.3d 113, 123 [113 Cal.Rptr. 102, 520 P.2d 726].) If the claim gives adequate information for the public entity to investigate, additional detail and elaboration in the complaint is permitted.

By notifying JPIA of its act (wrongful termination) that caused his injury (loss of earnings, mental and physical pain and suffering) and naming those JPIA agents he believed responsible, Stockett's claim provided sufficient information for JPIA to investigate and evaluate its merits. Contrary to JPIA's suggestion, a reasonable investigation of a wrongful termination claim would not be limited to the motives for termination hypothesized in the fired employee's claim form; certainly it would not be so limited where, as here, the employee at the time of termination asked for the reasons and was refused them. A reasonable investigation by JPIA would have included questioning members of the committee to discover their reasons for terminating Stockett and an evaluation of whether any of the reasons proffered by the committee, including but not limited to the theories in Stockett's claim, constituted wrongful termination. (Cf. *Sandhu v. Lockheed Missiles and Space Co.* (1994) 26 Cal.App.4th 846, 859 [31 Cal.Rptr.2d 617] [where administrative charge claimed only racial discrimination, complaint was not defective in alleging national origin discrimination as well; "we are confident that the administrative investigation into Sandhu's claim of disparate treatment because he was 'Asian' would likely have encompassed both race and national origin"]; *Baker v. Children's Hospital Medical Center* (1989) 209 Cal.App.3d 1057, 1065 [257 Cal.Rptr. 768] [investigation of administratively charged

---

his responsibility to carry out the law fairly reflected complaint's theory that his termination violated the whistle-blower statute, as "any interference with plaintiff's reporting duties implicated the whistle-blower statute"); *Mouchette v. Board of Education* (1990) 217 Cal.App.3d 303, 311 [266 Cal.Rptr. 1], disapproved on other grounds in *Caldwell v. Montoya* (1994) 10 Cal.4th 972, 984, footnote 6 [42 Cal.Rptr.2d 842, 897 P.2d 1320] (plaintiff's claim alleging he was permanently terminated and that his job functions were being performed by other employees "set forth the factual basis" for the complaint's theory he was illegally denied statutory reemployment rights); *Smith v. County of Los Angeles* (1989) 214 Cal.App.3d 266, 273–274, 279–280 [262 Cal.Rptr. 754] (claim that county "cut into the hill" to create a road, removing support for residences, fairly reflected allegation in complaint that county removed slide debris that had provided hillside support); *Stephenson v. San Francisco Housing Authority, supra,* 24 Cal.App.4th at pages 276–278 (claim that city negligently maintained public housing building and failed to discover plaintiff's injured father, a building resident, for seven days after an earthquake fairly reflected allegation in complaint that defendant had failed to inspect and/or disclose latent defects of the premises).

instances of discrimination "would lead to the investigation of subsequent discriminatory acts undertaken by respondents in retaliation for appellant's filing an internal grievance"].)

In summary, Stockett adequately presented to JPIA his wrongful termination cause of action. His notice of claim satisfied the purposes of the claims statutes by providing sufficient information for the public entity to conduct an investigation into the merits of the wrongful termination claim, and the complaint's free speech and conflict of interest theories of termination in violation of public policy were fairly reflected in the claim because the complaint did not change the fundamental facts of the claim. Stockett was therefore not precluded from amending his complaint to include these theories or from presenting them to the jury. The Court of Appeal erred in holding he was.

### DISPOSITION

The judgment of the Court of Appeal is reversed, and the matter is remanded to that court for further proceedings consistent with the views expressed herein.

George, C. J., Kennard, J., Baxter, J., Chin, J., Brown, J., and Moreno, J., concurred.