**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALEKSANDAR MACKOVSKI and ANDRIJANA MACKOVSKA, | No. 14-56880 |
| Plaintiffs-Appellants, | D.C. No. 8:11-cv-01538-CJC-AN |
| v. | |
| CITY OF GARDEN GROVE, a municipal entity; et al., | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Submitted October 17, 2016[**]
Pasadena, California

Before: TALLMAN and CHRISTEN, Circuit Judges, and KENNELLY,[***]
District Judge.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Matthew F. Kennelly, United States District Judge for the Northern District of Illinois, sitting by designation.

Aleksandar Mackovski and Andrijana Mackovska sued the City of Garden Grove, the City of Garden Grove Police Department, and Officer Ray Bex under 42 U.S.C. § 1983 asserting violations of their Fourth Amendment rights. The plaintiffs argued that the defendants conducted unreasonable searches and seizures of their shared property on June 17 and 18, 2010. Mackovski also argued that the defendants unlawfully used excessive force during his July 14, 2010 arrest. Their complaints included state law tort claims.

The district court consolidated the actions and granted summary judgment on all claims. We have jurisdiction under 28 U.S.C. § 1291. Reviewing de novo, and construing all facts in the light most favorable to plaintiffs, *see Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011), we affirm in part, reverse in part, and remand to the district court.

1. Plaintiffs' Fourth Amendment claims against Officer Bex pertaining to the Garden Grove Police Department's June 17 visit to 13472 Epping Way, Tustin, California, 92780 fail. At most, the record shows that Officer Bex arrived at the Epping Property around 11:00 p.m., that he likely entered through the gate and into the curtilage, that he knocked on the front door of the property, and that he departed once the officers discovered that Mr. Mackovski was not present. The declarations plaintiffs offered in opposition to summary judgment suggest that

2

police officers may have exceeded the scope of the knock-and-talk exception by circling the property, and not merely approaching the exterior doors of the premises.

But only Officer Bex is a defendant here, and plaintiffs offered no evidence that Officer Bex himself exceeded the scope of the knock-and-talk exception to the warrant requirement. The exception "permits law enforcement officers to 'encroach upon the curtilage of a home for the purpose of asking questions of the occupants.'" *United States v. Lundin*, 817 F.3d 1151, 1158 (9th Cir. 2016) (quoting *United States v. Perea-Rey*, 680 F.3d 1179, 1187 (9th Cir. 2012)). Its scope is coterminous with the implied license to approach a home, "knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Florida v. Jardines*, 133 S. Ct. 1409, 1415 (2013). We have held that "unexpected visitors are customarily expected to knock on the front door of a home only during normal waking hours." *Lundin*, 817 F.3d at 1159.

Although Officer Bex and the other officers approached the property at 11:00 p.m., on the border of normal waking hours, there is no evidence that they intended to do anything more than ask Mackovski questions. And although there was evidence that some officers circled the property and walked through the backyard, plaintiffs offered no evidence that Officer Bex was one of those officers

or that he directed any of the others to do so. The district court properly granted summary judgment on this claim.

2. Plaintiffs' Fourth Amendment claims relating to the June 18 search of 13472 Epping Way also fail. We review the issuance of a search warrant by a magistrate judge for clear error, in order "to determine whether the magistrate had a substantial basis to conclude that the warrant was supported by probable cause." *United States v. Fernandez*, 388 F.3d 1199, 1252 (9th Cir. 2004) (quoting *United States v. Celestine*, 324 F.3d 1095, 1100 (9th Cir. 2003)), *modified*, 425 F.3d 1248 (9th Cir. 2005). "Probable cause exists when, considering the totality of the circumstances, the affidavit shows that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (internal quotation marks omitted).

Here, the magistrate judge had a substantial basis to conclude that the search warrant was supported by probable cause because Officer Bex's affidavit demonstrated there was a fair probability that guns Mackovski allegedly removed from 6541 Chapman Avenue would be found at his house. The district court correctly noted that "[t]he affidavit gave a detailed explanation of the underlying investigation and the success of the prior Chapman Property search in uncovering a number of illegal firearms, explosives, methamphetamine, chemicals,

4

and glassware used in the manufacturing of methamphetamine." Officer Bex's affidavit relied on two informants who independently reported that Mackovski removed guns from the Chapman property. Their reports were based on first-hand knowledge, and they provided reliable information in the past.

"A warranted search is unreasonable if it exceeds in scope or intensity the terms of the warrant." *United States v. Becker*, 929 F.2d 442, 446 (9th Cir. 1991) (quoting *United States v. Penn*, 647 F.2d 876, 882 n.7 (9th Cir. 1980) (en banc)). Here, the search warrant authorized the seizure of firearms, ammunition, gun cleaning equipment, and "[a]ny personal papers or writings, photographs, or other documentation showing dominion and control over the aforementioned items to be seized." The police did not exceed the search warrant's scope by seizing receipts, bank statements, passports, and credit cards found in Mackovski's room showing dominion and control.

We also agree with the district court that a reasonable juror would have to engage in "pure speculation" to find that the police seized $350,000 of diamonds from Mackovski's room during the search. The only evidence Mackovski submitted pertaining to the diamonds was an appraisal from January 2010, indicating they were worth $350,000 at that time. Mackovski was not present during the search, did not return to the property until one week later, does not

5

know whether anyone else went into his room after the search and before his return, and submitted no other evidence that the police stole the diamonds.

3. We reverse the district court's grant of summary judgment with respect to Mackovski's Fourth Amendment claim stemming from the July 14 arrest. The arrest warrant was supported by probable cause, but a reasonable jury could find that Officer Bex used excessive force under the circumstances.

The arrest warrant was based on evidence obtained during the June 18 search, including 1.3 grams of marijuana packaged in individual 0.5" x 0.5" zip-lock bags, additional empty zip-lock bags, and a gun matching the description of one of the guns Mackovski allegedly removed from the Chapman property. The gun was registered to another individual, whom the police could not locate. They did not find any paraphernalia that could be used for the purpose of smoking marijuana. The district court correctly concluded that based on the totality of the circumstances there was a fair probability Mackovski had committed a crime by possessing marijuana for sale in violation of California Health and Safety Code § 11359, with an enhancement for committing a felony while armed with a firearm pursuant to California Penal Code § 12022(a)(1).

"Under the Fourth Amendment, officers may only use such force as is 'objectively reasonable' under the circumstances." *Jackson v. City of Bremerton*,

268 F.3d 646, 651 (9th Cir. 2001) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). "To determine whether the force used was reasonable, courts balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id.* (quoting *Graham*, 490 U.S. at 396).

Mackovski asserts that when the police approached him on the street "with guns drawn," he "immediately went down on the ground." Once he was on the ground the officers handcuffed him and then "jumped all over" him. The "pressure and pain from when they pushed [his] arms backwards" allegedly caused him to black out. The hospital report from Mackovski's visit to Saint Joseph's Hospital the day after the arrest shows he suffered bruises and abrasions.

Mackovski had no prior criminal record, the search of his room yielded a relatively small quantity of marijuana, and Mackovski expressed a willingness to meet with the officers when they contacted him by telephone on the night of the knock and talk. Although Mackovski allegedly removed three guns from the Chapman property, there is no evidence that he was otherwise involved in any of the criminal activity at the Chapman address and the officers knew he had no prior criminal history. Officer Bex avers that he only used reasonably necessary force to push Mackovski to the ground during the arrest, and that he ceased using force

7

once Mackovski was handcuffed. But Mackovski's declaration asserts that Officer Bex "jumped all over" him *after* he was handcuffed, at which point Mackovski no longer posed a threat. Interpreting these conflicting declarations in the light most favorable to Mackovski, a reasonable jury could find that he was tackled after he was handcuffed. Therefore, the district court erred by ruling no reasonable jury could find a Fourth Amendment violation.

4. Plaintiffs' Fourth Amendments claims against the City of Garden Grove and the Garden Grove Police Department fail under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Rather, in order to prevail on a § 1983 claim against a city, a plaintiff must prove that the constitutional injury was inflicted pursuant to city policy, regulation, custom, or usage. *Id*; *see also Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994). "City policy causes an injury where it is the moving force behind the constitutional violation, or where the city itself is the wrongdoer." *Chew*, 27 F.3d at1444 (internal quotation marks and citations omitted).

The plaintiffs did not identify any specific policy or regulation that caused

8

the alleged constitutional violations in this case. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citing *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984)). To demonstrate a custom, plaintiffs point to the events that occurred on June 17, June 18, and July 14; their immigrant status; the fact that the police officers "refused to give plaintiff Mr. Mackovski a break as he struggled" with English during the depositions in this case; and the police department's refusal to return seized property to the plaintiffs absent a court order mandating that the police do so. These "isolated or sporadic incidents" are insufficient to show a "longstanding practice or custom." *See Trevino*, 99 F.3d at 918. Even if the events of this case constitute a custom, plaintiffs have not demonstrated that this custom *caused* the alleged constitutional violations. Thus, the district court properly granted summary judgment for the City of Garden Grove and the Garden Grove Police Department on plaintiffs' § 1983 claims.

5. The California Government Tort Claims Act bars plaintiffs' state law claims, except for negligence, because the date on the required claim forms, and the theories of liability set forth therein, varied materially from that which was

alleged in their civil complaints. The Act requires a plaintiff to file a written claim stating "the date, place, and other circumstances of the occurrence or transaction which gave rise to the claim asserted," Cal. Gov't Code § 910, within six months of the accrual of the cause of action, *id.* § 911.2. "If a plaintiff relies on more than one theory of recovery against the state, each cause of action must have been reflected in a timely claim." *Nelson v. State*, 188 Cal. Rptr. 479, 483 (Cal. Ct. App. 1982). The Act's purpose "is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." *Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 99 P.3d 500, 502 (Cal. 2004) (internal quotation marks omitted).

The plaintiffs' second amended complaints alleged state law claims for negligence, conversion/trespass, intentional infliction of emotional distress, and interference with prospective economic advantage arising from the June 17 visit, June 18 search, and July 14 arrest. Mackovski and Mackovska only listed "unreasonable search and seizure, negligence, and violation of a constitutional right" stemming from the June 18 search on their claim forms. The forms did not provide an account of the factual basis underlying the claims. Instead, plaintiffs attached photos of the Epping house taken after the search, a list of property

10

damage, fifty pages of government documents (including a copy of the June 18 search warrant and underlying affidavit), and the diamond appraisals. These documents only related to the June 18 search, and were insufficient to present the additional causes of action in the second amended complaints because they did not provide the city with enough information "to enable it to adequately investigate" the claims. *See Stockett*, 99 P.3d at 502. The district court correctly dismissed the claims for conversion/trespass, intentional infliction of emotional distress, and interference with prospective economic advantage.

6. Plaintiffs' remaining negligence claim fails as a matter of law because the defendants are entitled to immunity under California Government Code §§ 815 and 821.6. Section 815(a) states: "Except as otherwise provided by statute . . . [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." On appeal, the plaintiffs argue that the entity defendants are liable under California Government Code § 815.2(a), which holds a public entity "liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." However, under § 815.2(b), "a public entity is not liable for an

11

injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." Here, Officer Bex is immune under § 821.6, and the entity defendants are therefore immune as well.

Section 821.6 states: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." California courts have repeatedly held that § 821.6 applies broadly beyond malicious prosecution claims to investigations "prior to the institution of a judicial proceeding . . . because investigations are an essential step toward the institution of formal proceedings." *Cty. of Los Angeles v. Superior Court*, 104 Cal. Rptr. 3d 230, 238 (Cal. Ct. App. 2009), *as modified* (Jan. 22, 2010); *see also Baughman v. State*, 45 Cal. Rptr. 2d 82, 89 (Cal. Ct. App. 1995)*; Amylou R. v. Cty. of Riverside*, 34 Cal. Rptr. 2d 319, 321 (Cal. Ct. App. 1994). The district court correctly ruled that the defendants are entitled to immunity from plaintiffs' negligence claim under these statutes.

Each party shall bear its own costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

<u>Mackovski v. City of Garden Grove</u>, No. 14-56880

TALLMAN, Circuit Judge, concurring in part and dissenting in part:

I concur in the disposition except for the remand on plaintiffs' excessive force claim. On all claims, I would hold Officer Bex is entitled to qualified immunity and would affirm entry of summary judgment for all defendants.

At the time of Mackovski's arrest, Officer Bex had ample probable cause to believe that Mackovski was armed and dangerous. Police had already connected Mackovski to his accomplice, a convicted felon and known methamphetamine manufacturer and distributor, Micky Apostolovic. An earlier search of Apostolovic's residence (the "Chapman property") had revealed methamphetamine, marijuana, and chemicals and glassware used in the manufacturing of methamphetamine. Police had also discovered ammunition and a cache of weapons, including a .22-caliber rifle, an "Uzi" submachine gun and "silencer," a loaded .380 Smith and Wesson revolver, a live hand grenade, and two pipe bombs that had to be disarmed by the Orange County Sheriff's Department Bomb Squad. A reliable informant told police that, after the search, Mackovski had removed additional weapons from the Chapman property that police had failed to locate. Indeed, one weapon—a chrome, western-style revolver—that had gone missing from the Chapman property was recovered during the search of

Mackovski's residence on June 18, 2010, along with marijuana intended for distribution.

In sum, at the time Officer Bex executed the warrant for Mackovski's arrest, reasonable officers could objectively believe that they were making a high-risk, felony arrest of a suspect known to carry weapons and involved with others' serious crimes. The recovery of the revolver at Mackovski's residence—which Officer Bex reasonably believed Mackovski had removed at Apostolovic's direction and to assist Apostolovic in evading further detection by law enforcement—belies the majority's assertion that police had "no evidence" to connect Mackovski with Apostolovic's criminal activities. The scope of substantive criminal liability easily encompasses the conduct of both men, and a reasonable officer would exercise great caution in apprehending either of them.

The Fourth Amendment permits police officers to use force as reasonably necessary to effectuate an arrest and neutralize any ongoing threat to the officers and others, even if doing so causes some injury. *Jackson v. City of Bremerton*, 268 F.3d 646, 650, 652–53 (9th Cir. 2001) (finding no Fourth Amendment violation where police officers pushed an arrestee to the ground to handcuff her, pulled her up to her feet, and put her in a police vehicle in ninety-degree heat with the windows rolled up, and the arrestee suffered a fractured finger); *see also Saucier v. Katz*, 533 U.S. 194, 208–09 (2001) (finding that officers did not violate clearly

established Fourth Amendment law by shoving a protestor wearing a leg brace into a military police van). "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). As the Supreme Court has reminded us, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The intrusion on Mackovski's Fourth Amendment interests was minimal. Mackovski states that during the arrest he was on the ground when officers handcuffed him and then "jumped all over him." Even assuming that Mackovski's statement can be construed to mean that Officer Bex "tackled" Mackovski after he was forced to the ground and handcuffed, as the majority suggests, Officer Bex was justified in using force to subdue this dangerous suspect. After the officers "jumped all over him," Mackovski alleges they pulled his arms back and he blacked out. According to hospital records, Mackovski's injuries were limited to "bruises and abrasions." As the district court noted, "[a]dmittedly, the officers did not treat Mr. Mackovski gently, but such facts demonstrate a minimal to moderate intrusion, at most."

Balancing the "nature and quality of the intrusion" on Mackovski's Fourth Amendment rights against the officers' interests in making a safe arrest clearly favors the officers here.  If we are to take Supreme Court doctrine seriously and view the reasonableness of the arrest "in light of the facts and circumstances confronting [officers]" at the time, *id.* at 397, then we should find as a matter of law that Officer Bex's use of force was justified to apprehend a known dangerous suspect.  I fear that decisions like this one are converting federal civil rights actions into common law negligence suits.  That was not the evil Congress was addressing in the post-Civil War era when section 1983's predecessor was enacted into law.  I would grant summary judgment for the defendants on plaintiffs' excessive force claim and affirm the district court's judgment in its entirety.