*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

*In re* ASK, Minor.

---

PEOPLE OF THE STATE OF MICHIGAN,

        Petitioner-Appellee,

v

ASK,

        Respondent-Appellant.

UNPUBLISHED
March 19, 2025
9:06 AM

No.  371754
Macomb Circuit Court
Family Division
LC No.  2023-001180-DL

---

*In re* ASK, Minor.

---

PEOPLE OF THE STATE OF MICHIGAN,

        Petitioner-Appellee,

v

ASK,

        Respondent-Appellant.

No.  371755
Macomb Circuit Court
Family Division
LC No.  2023-001248-DL

---

*In re* AK, Minor.

---

PEOPLE OF THE STATE OF MICHIGAN,

        Petitioner-Appellee,

v

No.  371758
Macomb Circuit Court

-1-

AK,                                                                    Family Division
                                                                       LC No.   2023-001181-DL
                              Respondent-Appellant.

_____

Before:  YOUNG, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Respondents appeal by leave granted[1] the trial court's order denying their identical motions to suppress.  In those motions, respondents argued that (1) officers trespassed when they conducted a nighttime "knock and talk" at respondents' home, turning the knock and talk into a warrantless search in violation of the Fourth Amendment and (2) the officers' warrantless seizure of a Cadillac Escalade from the curtilage of respondents' home violated respondents' Fourth Amendment right to be free from unreasonable seizures.  The trial court denied respondents' motions, reasoning that (1) the officers were not trespassing when they performed the knock and talk and (2) respondents did not have standing to challenge the seizure of the Escalade.  For the reasons explained in this opinion, we affirm the trial court's conclusion that the officers were not trespassing when they performed a knock and talk at 10:43 p.m. on a Saturday, but we reverse the trial court's holding that respondents did not have standing to challenge the seizure of the Escalade, hold that the warrantless seizure of the Escalade violated respondents' rights to be free from unreasonable seizures, and remand for further proceedings.

## I.  BACKGROUND

This case arose after ASK allegedly drove his parents' black Cadillac Escalade in a reckless manner while someone in the Escalade shot projectiles at another vehicle.  The victims of the shooting recorded the license plate number of the Escalade and provided it to police when reporting the shooting.  The Escalade was registered to respondents' father at respondents' home address. Officer Robert Wathen and his partner went to respondents' house to locate the Escalade.

The officers approached respondents' front door to conduct a knock and talk at about 10:43 p.m.  Respondents' parents answered the door and informed the officers that their teenage sons were out in the Escalade and had been gone longer than expected.  Officer Wathen asked if respondents' parents could summon respondents home so that the officers could question them, and respondents' parents complied.  Shortly thereafter, ASK returned home in a black Escalade with a license plate matching the one reported by the victims of the shooting.  ASK parked the Escalade next to the garage and walked over to his parents and Officer Wathen.  Officer Wathen questioned ASK about the shooting but did not gain any useful information.  Officer Wathen asked respondents' father for permission to search the Escalade, but he refused.

_____

[1] *In re ASK*, unpublished order of the Court of Appeals, entered September 20, 2024 (Docket No. 371754); *In re ASK*, unpublished order of the Court of Appeals, entered September 20, 2024 (Docket No. 371755); *In re AK*, unpublished order of the Court of Appeals, entered September 20, 2024 (Docket No. 371758).

At this point, Officer Wathen ceased his questioning and returned to his squad car to call a detective to discuss seizing the Escalade. The officer did not mention the possible seizure of the Escalade to ASK or his parents, who went inside their house once the officer left. After Officer Wathen received approval to seize the Escalade and the tow truck arrived, the officer returned to the front door of respondents' home, knocked, and asked respondents' father for the keys to the Escalade to prevent the tow from damaging the vehicle. Respondents' father obliged. By this time, AK had returned home, and while officers were seizing the Escalade, respondents and their parents assaulted the officers to prevent them from towing the vehicle. The Escalade was nevertheless impounded, and officers eventually obtained a warrant to search the Escalade. When the warrant was executed, officers found incriminating evidence of the shooting in the vehicle.

Respondents later moved to suppress evidence obtained from the officers' visit to respondents' home on grounds that (1) the officers trespassed when they entered the curtilage of respondents' home to conduct a knock and talk and (2) the officers were required to obtain a warrant before seizing the Escalade because it was parked within the curtilage of respondents' home. In response, the prosecution argued that respondents lacked standing to challenge the seizure of the Escalade because they did not own it and did not have any proprietary or possessory interest therein. The prosecution alternatively argued that the seizure of the Escalade was justified by exceptions to the Fourth Amendment's warrant requirement.

After an evidentiary hearing, the trial court issued a written order denying respondents' motion to suppress. With respect to respondents' challenge to the knock and talk, the court held that the police officers did not trespass when they initiated the knock and talk at 10:43 p.m. As for respondents' challenge to the warrantless seizure of the Escalade, the court held that, regardless of where the Escalade was parked, respondents lacked standing to challenge its seizure.

This appeal followed.

## II. STANDARD OF REVIEW

Respondents on appeal challenge the trial court's decision to deny their motions to suppress. A trial court's factual findings on a motion to suppress are reviewed for clear error, while the court's decision on whether a constitutional violation occurred is reviewed de novo. *People v Rodriguez*, 327 Mich App 573, 583; 935 NW2d 51 (2019). A finding is clearly erroneous if the reviewing court is definitely and firmly convinced that the lower court made a mistake. *Id*.

## III. KNOCK AND TALK

We first consider whether officers violated the Fourth Amendment when they conducted a knock and talk at respondents' home on the night of the shooting.

As a general matter, a warrantless search or seizure within a home—which includes the curtilage of the home—is per se unreasonable under the Fourth Amendment. *People v Frederick*, 500 Mich 228, 234; 895 NW2d 541 (2017); *Florida v Jardines*, 569 US 1, 6; 133 S Ct 1409; 185 L Ed 2d 495 (2013). A properly performed "knock and talk" is not a search, though, so it does not implicate the Fourth Amendment. *Frederick*, 500 Mich at 234. A knock and talk is properly performed when officers confine the knock and talk to the "implied license" that all members of the public enjoy to approach a home and knock on its front door. *Id*. at 234-235. "This implicit

license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Jardines*, 569 US at 8. The "background social norms" that govern the proper scope of a knock and talk are the same norms that govern all private citizens when they knock on someone's front door. *Id*. at 9. If officers exceed the proper scope of a knock and talk—that is, if they exceed the implied license to approach a home and knock on its front door—and they do so while information-gathering, it implicates the Fourth Amendment. *Id*. In other words, a search occurs for purposes of the Fourth Amendment when police trespass on protected property to gather information, even if the trespass or information-gathering would not, standing alone, implicate the Fourth Amendment. *Frederick*, 500 Mich at 236-237.

As particularly relevant here, our Supreme Court in *Frederick* held that the implied license that permits officers to approach a home and knock on the front door without implicating the Fourth Amendment "is time-sensitive." *Id*. at 238. The Court accordingly held that officers who knocked on suspects' doors "in the middle of the night" were trespassing, as they "strayed beyond what any private citizen might do." *Id*. at 238-239. The *Frederick* Court was clear, however, that it was not announcing a bright-line rule governing when officers could approach a front door without exceeding the implied license enjoyed by the public at-large; the Court held only that "there were no circumstances" in the cases before it "that would lead a reasonable member of the public to believe that the occupants of the respective homes welcomed visitors at 4:00 a.m. or 5:30 a.m." *Id*. at 239 n 6. The Court also caveated that its announced rule did not govern emergencies, explaining, "Emergencies justify conduct that would otherwise be unacceptable; they are exceptions to the rule, not the rule." *Id*. at 240. But there was no emergency or any other circumstance justifying the officers' early morning visits in *Frederick*, so the Court held that the officers were trespassing. *Id*. And because the officers were engaged in information-gathering while trespassing, "their conduct implicated the Fourth Amendment." *Id*. at 241.

Turning to the instant case, there does not appear to be any dispute that when officers approached the front door of respondents' home at 10:43 p.m. on the night of the shooting, they were there to gather information. We assume without deciding that this is correct. This assumption makes the central question on appeal whether the officers exceeded the implied license granted to all members of the public when they approached respondents' home, i.e., whether the officers were trespassing when they performed the knock and talk. Considering the totality of the circumstances surrounding the knock and talk, we conclude that the officers were not trespassing when they approached respondents' home at 10:43 p.m. See *People v Bolduc*, 263 Mich App 430, 432; 688 NW2d 316 (2004) (explaining that the constitutionality of a knock and talk depends on "the particular circumstances" of the case).

Officers went to respondents' home after learning that a black Cadillac Escalade with a license plate tied to respondents' home address had reportedly been driving recklessly while someone in the car shot projectiles at other cars. The first officer to arrive at respondents' home, Officer Wathen, testified that he went to the home originally to try to "intercept the person driving the vehicle as he headed back home." But the officer did not observe any vehicles coming or going, and he could not see the Escalade in the driveway "or anywhere near the house." Being unable to locate the Escalade, Officer Wathen and his partner decided to approach the door of respondents' home to ask the occupants if they knew where the car was. While this took place in the late evening—10:43 p.m.—it was a Saturday and the porchlight was on. Additionally, the

officers knew that the Escalade was registered to respondents' father, but they suspected that a younger individual was driving the car at the time of the shooting. From this, it was reasonable for the officers to infer that the Escalade belonged to the driver's parents, who permitted the young driver to take the car. See *Jardines*, 569 US at 10 (explaining that courts consider whether an officer's conduct was "objectively reasonable"—and do not look to an officer's "subjective intent"—when deciding whether a knock and talk was proper). Given the day of the week, the time, the fact that the porchlight was on, and the suspicion that a teenager who lived in the home was out of the house with his parents' vehicle, it was reasonable for officers to infer that the presumed occupants of the home—the parents of the suspected driver—were awake at the time (which they were). It was under these circumstances that officers approached respondents' home for the limited purpose of trying to locate the Escalade that was involved in a shooting just a short time before. See *id*. at 9 (explaining that the scope of the implied license to approach one's front door depends in part on the "specific purpose" of approaching). When the officers approached the door, they did as any member of the public would be expected to do—they confined themselves to the driveway and associated pathway where the general public would be expected to go, knocked promptly, and only lingered while they spoke with respondents' parents and ASK. See *id*. at 8 ("This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave."). On these facts, we conclude that, despite the hour of their visit, the officers were not trespassing when they approached respondents' front door and performed a knock and talk.

In reaching this conclusion, we find persuasive this Court's nonbinding discussion in *People v Trapp*, 335 Mich App 141, 152; 966 NW2d 420 (2020), where this Court "assume[d]" that officers performed a proper knock and talk at a manufactured home "to investigate whether an armed and dangerous man had taken refuge in" the home. *Id*. at 152. The *Trapp* Court explained the basis for its assumption as follows:

> Unlike in *People v Frederick*, 500 Mich 228, 240; 895 NW2d 541 (2017), the events in this case played out before 11:00 p.m. and not in "the middle of the night." A light was on in the trailer when the officers arrived, and the video evidence supports that no one was asleep. The officers were justified in approaching the trailer to gather information about what had transpired regarding the armed man who had been brandishing a gun on the trailer park premises. [*Trapp*, 335 Mich App at 153 n 4.]

Here, like in *Trapp*, officers approached respondents' home before 11:00 p.m., a light was on, no one was asleep, and the officers approached the particular dwelling for the limited purpose of inquiring about a potentially dangerous situation connected to that home.

Respondents argue that the officers were trespassing based exclusively on the time that the officers approached respondents' front door—they contend that the public, in the abstract, does not have an implied license to knock on a home's door at 10:43 p.m., so the officers here likewise lacked an implied license to approach at that time. As we read *Frederick*, however, it says that time is but one factor courts are to consider when determining whether a knock and talk exceeded the scope of the public's implied license to approach a front door. See *Frederick*, 500 Mich at 239 n 6 (declining to "decide precisely what time the implied license to approach begins and ends," opting instead to decide that, in the case before it, "there were no circumstances that would lead a reasonable member of the public to believe that the occupants of the respective homes welcomed

visitors at 4:00 a.m. or 5:30 a.m."). While the time of a knock and talk may, in some circumstances, be more relevant than other factors, it is still only one factor that courts should consider as part of the totality of the circumstances surrounding the knock and talk. And considering all of the factors discussed above, we conclude that the officers did not trespass when they entered the curtilage of respondents' home to perform a knock and talk.[2] For that reason, the officers' conduct did not implicate the Fourth Amendment.

## IV.  THE ESCALADE

Respondents next challenge the trial court's denial of their motion contesting the seizure of the Escalade. The trial court's ruling on this issue is difficult to parse, but it is clear that the court ultimately decided that respondents lacked standing to challenge the seizure of the Escalade and denied respondents' motion on that ground. We disagree with the trial court's standing analysis and, addressing the substance of respondents' argument, conclude that the warrantless seizure of the Escalade was unconstitutional.

Respondents argue that they have standing to challenge the seizure of the Escalade because it was parked in the curtilage of their home when it was seized. While the trial court did not address whether the Escalade was parked in the curtilage of respondents' home, the prosecution conceded as much at oral argument. In light of the prosecution's concession, we agree with respondents that they have standing to challenge the seizure of the Escalade.

To have Fourth Amendment standing, "the individual must have had a legitimate expectation of privacy in the place or location searched, which expectation society recognizes as reasonable." *People v Brown*, 279 Mich App 116, 130; 755 NW2d 664 (2008). There can be no serious dispute that respondents have a legitimate expectation of privacy in their own home that society recognizes as reasonable. See *People v Mahdi*, 317 Mich App 446, 459-460; 894 NW2d 732 (2016). And it is well-established that the curtilage is part of the home for Fourth Amendment purposes. See *Oliver v United States*, 466 US 170, 180; 104 S Ct 1735; 80 L Ed 2d 214 (1984). It follows that, because the Escalade was parked in the curtilage of respondents' home, respondents have standing to challenge its seizure in the same way that they would have standing to challenge the seizure of an item taken from within their home. See *Alderman v United States*, 394 US 165, 176-177; 89 S Ct 961; 22 L Ed 2d 176 (1969) ("If the police make an unwarranted search of a house and seize tangible property belonging to third parties . . . the homeowner may object to its use against him, not because he had any interest in the seized items as 'effects' protected by the Fourth Amendment, but because they were the fruits of an unauthorized search of his house, which is itself expressly protected by the Fourth Amendment."); 3 Lafave, Israel, King, & Kerr, Criminal

---

[2] This conclusion is consistent with the conclusions reached by courts in other jurisdictions who have similarly considered whether a nighttime knock and talk implicated the Fourth Amendment. See *Saal v Commonwealth*, 72 Va App 413, 426-428; 848 SE2d 612 (2020) (holding that officers were not trespassing when they conducted a knock and talk at 12:30 a.m.); *Mackovski v City of Garden Grove*, 666 Fed Appx 649, 651 (CA 9, 2016) (holding that the officers' 11:00 p.m. knock and talk was proper, despite that it was "on the border of normal waking hours"). See also *United States v Walker*, 799 F3d 1361, 1364 (CA 11, 2015) (holding that, under the circumstances of the case, the officers were not trespassing when they went to the defendant's home at 5:04 a.m.).

Procedure (4th ed), § 9.1(b) ("Establishing such an interest in the premises searched itself suffices to establish standing, and thus the defendant need not also show an interest in the particular items which are seized by the police."). The trial court therefore erred when it held that respondents lacked standing to challenge the seizure of the Escalade.

Turning to the substance of respondents' argument, respondents contend that their constitutional rights were violated when officers seized the Escalade from the curtilage of respondents' home without a warrant. The warrantless seizure of an item from within the curtilage of a home is per se unreasonable under the Fourth Amendment unless one of the exceptions to the warrant requirement applies. *Frederick*, 500 Mich at 234; *People v Roberts*, 292 Mich App 492, 503; 808 NW2d 290 (2011). The prosecution argues that the warrantless seizure of the Escalade was justified by two exceptions to the warrant requirement—exigent circumstances and the plain-view exception. We conclude that neither exception justified the warrantless seizure of the Escalade in this case.

To justify a warrantless seizure pursuant to the exigent-circumstances exception, officers must "establish the existence of an actual emergency on the basis of specific and objective facts indicating that immediate action is necessary to (1) prevent the imminent destruction of evidence, (2) protect the police officers or others, or (3) prevent the escape of a suspect." *Trapp*, 335 Mich App at 167-168 (quotation marks and citation omitted). Here, there was no emergency. Officers were watching the Escalade and there was nothing to suggest an imminent threat of evidence in the Escalade being destroyed. The Escalade also did not pose a threat to the officers or others; it was parked in a driveway where officers could watch it. Lastly, seizing the Escalade was not necessary to prevent any suspect from escaping because, again, officers were watching the Escalade outside the house where the suspect was located, and nothing suggested that the suspect would use the Escalade to escape. On the basis of the foregoing, we conclude that no exigent circumstances justified the seizure of the Escalade.

As for the plain-view exception, it provides that if officers are legally present in a constitutionally-protected area, they are permitted to seize readily visible items if the item's incriminating character is immediately apparent. *People v Barbee*, 325 Mich App 1, 5-6; 923 NW2d 601 (2018). "An item is obviously incriminatory, meaning its incriminating nature is immediately apparent, if without further search the officers have probable cause to believe the items are seizable." *Mahdi*, 317 Mich App at 462 (quotation marks and citation omitted). The Escalade that the officers seized in this case was obviously incriminatory—its description and license plate number matched the description and plate number of the vehicle reportedly involved in the shooting. But the plain-view exception cannot apply to the officers' seizure of the Escalade given the prosecution's concession that the Escalade was parked in the curtilage of respondents' home.[3]

---

[3] This concession distinguishes this case from cases like *United States v Galaviz*, 645 F3d 347, 355-356 (CA 6, 2011), and *United States v Coleman*, 923 F3d 450, 455-457 (CA 6, 2019), where the Sixth Circuit held that vehicles parked in the driveways of homes were properly seized under the plain-view exception to the warrant requirement. In both *Galaviz* and *Coleman*, the Sixth

"A plain-view seizure cannot be justified if it is effectuated by unlawful trespass." *Collins v Virginia*, 584 US 586, 595; 138 S Ct 1663; 201 L Ed 2d 9 (2018) (quotation marks and citation omitted). The officers in this case were plainly trespassing when they walked into the curtilage of respondents' home and seized the Escalade parked there. This is because the curtilage is considered part of the home for Fourth Amendment purposes. *Oliver*, 466 US at 180. The officers could no more enter the curtilage of respondents' home to seize the Escalade without a warrant than they could enter respondents' home itself to seize an item from within the home without a warrant. See *Collins*, 584 US at 594 ("Applying the relevant legal principles to a slightly different factual scenario confirms that this is an easy case. Imagine a motorcycle parked inside the living room of a house, visible through a window to a passerby on the street. Imagine further that an officer has probable cause to believe that the motorcycle was involved in a traffic infraction. Can the officer, acting without a warrant, enter the house to search the motorcycle and confirm whether it is the right one? Surely not.").

The prosecution contends that the plain-view exception applies because the officers were in a lawful position when they discovered the incriminating character of the Escalade, but the mere "ability to observe inside curtilage from a lawful vantage point" is not enough to justify a plain-view seizure. *Id*. at 600. Rather, an officer must have "a lawful right of access to" the item seized for the plain-view exception to apply. *Id*. at 596. If an officer must trespass to seize an item, then the item's seizure cannot be justified by the plain-view exception to the warrant requirement. See *id*. at 595 ("A plain-view seizure cannot be justified if it is effectuated by unlawful trespass.") (quotation marks and citation omitted).

The parties on appeal further dispute whether the exclusionary rule applies under the circumstances, but we decline to address that issue as part of this appeal and instead leave that issue for the trial court to resolve on remand.

## V. CONCLUSION

We affirm the trial court's conclusion that the knock and talk at 10:43 p.m. on a Saturday was proper, but we reverse the trial court's holding that respondents lacked standing to challenge the seizure of the Escalade, and hold that the warrantless seizure of the Escalade was unconstitutional. On remand, the trial court is instructed to decide whether the exclusionary rule applies.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Adrienne N. Young
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle

---

Circuit concluded that the part of the driveway where the vehicle was parked was not part of the curtilage of the home.