Filed 6/28/22

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| TIMOTHY SIMMS, | |
| Plaintiff and Appellant, | E075184 |
| v. | (Super.Ct.No. CIVDS1934524) |
| BEAR VALLEY COMMUNITY HEALTHCARE DISTRICT, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Keith D. Davis, Judge.  Reversed with directions.

Timothy Simms, in pro. per., for Plaintiff and Appellant.

Kramer, DeBoer & Keane, Kathleen A. Stosuy, Deborah O. DeBoer, and Karla M. Meier for Defendant and Respondent.

Plaintiff and appellant Timothy Simms wants to bring a medical malpractice lawsuit against defendant and respondent Bear Valley Community Healthcare District (Bear Valley).  Representing himself, he appeals from a judgment denying his petition under Government Code[1] section 946.6, in which he sought relief from the requirement

---

[1]  Undesignated statutory references are to the Government Code.

1

in the Government Claims Act (§ 810 et seq.) that he timely present a claim to Bear Valley before bringing a suit for damages. We reverse the judgment, finding that Simms does not require relief from the claim presentation requirement because he in fact submitted a timely claim, and the trial court erred by ruling he had not done so. Although Simms's claim was deficient in certain respects, its submission triggered a statutory duty for Bear Valley to notify Simms of the defects, and the failure to notify him waived any defense as to the claim's sufficiency. As such, Simms should be permitted to file a complaint.

In so ruling, we take sides in a split of California appellate authority that has remained unresolved for decades. This split concerns whether petitioners seeking judicial relief from claim requirements under section 946.6 may assert that they did present the public entity with a timely claim, or whether that argument may be raised only by filing suit and alleging compliance with claim requirements. We see no sound reason why a petitioner should not be able to raise actual compliance in a section 946.6 petition, or why the adjudicating court should be precluded from deciding that a submitted claim was compliant if there are no disputed issues of fact that need to be left for a jury's determination.

BACKGROUND

Bear Valley is a local health care district organized under Health and Safety Code section 32000 et seq. On December 8, 2017, Simms was injured in a fall and sought treatment at Bear Valley's emergency room. In December 2017 and January 2018,

2

Simms went to appointments with several Bear Valley medical providers to obtain additional treatment for continuing pain from his injuries.

Simms was not satisfied with his experience at the follow-up appointments. On two occasions—December 26, 2017, and January 26, 2018—he verbally "file[d] a grievance" with Bear Valley, complaining that the providers who saw him had the perception that he was trying to obtain drugs on false pretenses and thus were refusing to investigate and treat his ongoing, chronic pain. Bear Valley responded to these complaints with a letter dated January 30, 2018, explaining what the providers had observed about Simms's behavior during three visits. Several appointments in March and April 2018 also did not meet Simms's expectations. On April 24, 2018, Bear Valley sent Simms a "formal notice" that Bear Valley would "no longer serve as [his] primary care provider due to unresolved differences in treatment/care philosophy between providers and patient."

Simms sent Bear Valley a May 13, 2018 letter framed as a response to the January 30, 2018 letter. (According to Simms, he had been out of town and had not yet received the April 24, 2018 notice when he sent his May 13 response.) In the May 2018 letter, Simms detailed his experiences and denied any "drug seeking" behavior. He stated that being "treated like a criminal by a couple of [Bear Valley] Providers" had "added to" his chronic pain and given him "a tremendous amount of stress, anxiety, and severe mental anguish." Simms expressed dissatisfaction not only with the efforts of the Bear Valley providers to help him control his "chronic pain," including refusal to renew his

3

medications or transition him to different medications that would work better, but also with their failure to order additional scans to investigate the source of his pain. He demanded that all references to "drug seeking behavior" be removed from his medical records. Simms also asked for a "written apology" from a particular Bear Valley doctor "for his unprofessionalism, gross negligence and defamatory comments . . . which have now spread throughout all of [Bear Valley]." Simms threatened that if he "continue[d] to be defamed, harassed, mistreated and ignored by [Bear Valley]" he would "take [his] concerns to a higher level" by "filing a lawsuit for restitution." Bear Valley did not respond to the letter.

On July 11, 2019, Simms sent Bear Valley a letter framed as a "90-Day Notice of Intent to Sue as required by California Code of Civil Procedure § 364." The notice was addressed to the same Bear Valley employee as his May 2018 letter. In the notice, Simms stated that he intended to file a medical malpractice lawsuit against Bear Valley. He represented that on "July 18, 2018 and September 13, 2018" he received results of MRI scans ordered by his new health care provider, scans that Bear Valley providers had "refused to do." The scans revealed spinal injuries from Simms's December 2017 fall that Bear Valley had failed to diagnose, "result[ing] in further physical damage . . . coupled with an unnecessary delay of safe and proper treatment causing irreparable damage" to his neck and back "which has resulted in recommended surgeries to avoid paralysis." Simms also complained of "severe withdrawal symptoms" due to Bear Valley

4

providers' "refusal to provide continued care and/or prescribe [him] medications [he] had been taking for two years (or prescribe a safe withdrawal plan)."

Bear Valley treated Simms's July 11, 2019 letter as a claim under the Government Claims Act and responded with a "Notice of Return of Late Claim." The notice stated that Simms's claim was being returned "because it was not presented within six months after the event or occurrence as required by law." As required by statute, the notice informed Simms that his "only recourse" was to apply for leave to present a late claim. (See § 911.3, subd. (a).)

On July 30, 2019, Simms applied for leave to present a late claim. Bear Valley denied the application on August 20, 2019. As required by statute, the denial notice informed Simms that if he wished "to file a court action on this matter," he must "first petition the appropriate court for an order relieving [him] from the provisions of Government Code Section 945.4 (claim presentation requirement). See Government Code Section 946.6." (See § 911.8, subd. (b).)

On November 18, 2019, Simms petitioned the trial court for an order relieving him from the claim presentation requirement. Simms's proposed claim, framed as a letter to Bear Valley, is similar to his July 11, 2019 letter to Bear Valley and his proposed claim attached to his July 30, 2019 application for leave to present a late claim, except that the stated dates when he received MRI scan results are "October 13, 2018 and October 27, 2018" instead of the July and September dates. After a January 10, 2019, hearing, the trial court denied the petition, finding that Simms's May 2018 letter "did not comply with

5

the requirements of [the Government Claims Act] so as to be deemed either a claim or a defective claim," and that he had failed to demonstrate that he was entitled to relief from the requirement of presenting a timely claim.

DISCUSSION

Simms contends that the trial court abused its discretion in several ways. The argument that we find dispositive is that his May 2018 letter should have been treated by Bear Valley as a claim, even if a defective one, and that by failing to do so, Bear Valley waived any defense based on insufficiency of the claim. It follows, in Simms's view, that the trial court should have allowed him to proceed with a lawsuit alleging causes of action encompassed by that claim against Bear Valley. We agree.

Before turning to this analysis, however, we must first address a threshold matter. For decades, there has been an unresolved split of authority as to whether a plaintiff who files a section 946.6 petition seeking relief from the claim presentation requirement may assert that he actually submitted a timely claim, or whether that argument may be raised only by filing a lawsuit in which the complaint alleges compliance with the claim presentation requirement. (Compare, e.g., *Ngo v. County of Los Angeles* (1989) 207 Cal.App.3d 946, 951–952 (*Ngo*) [must be raised in a complaint alleging compliance] and *Rason v. Santa Barbara City Housing Authority* (1988) 201 Cal.App.3d 817, 827-828 (*Rason*) [same] with *Santee v. Santa Clara County Office of Education* (1990) 220 Cal.App.3d 702, 711 (*Santee*) [may be addressed in a claim-relief proceeding] and *Reyes*

6

*v. County of Los Angeles* (1988) 197 Cal.App.3d 584, 593-594 [same].) Our division of the Court of Appeal has not considered the issue in a published opinion.

In our view, cases like *Santee* take the better approach. The purpose of the claim requirement is to provide the public entity with sufficient information to avoid needless litigation. (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 455 [purpose is "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation"].) The *Ngo* approach multiplies legal proceedings unnecessarily, effectively requiring claimants who dispute a public entity's determination of timeliness to pursue the dual track of both (1) filing a civil lawsuit alleging compliance *and* (2) applying for relief first from the public agency under section 911.4 and then, if denied, from the court under section 946.6.

As *Ngo* notes, "[a] proceeding under section 946.6 is not a trial of the action itself and the court in those proceedings has no more power than would the court handling the action itself to grant what amounts to a summary judgment so long as there are triable issues of fact concerning whether or not the claims statutes were complied with." (*Ngo, supra*, 207 Cal.App.3d at p. 951.) The flip side of the same coin, however, is that there is no apparent reason why a court presiding over a section 946.6 proceeding would *not* have the power to decide whether the claimant had presented a timely claim in the *absence* of any triable issues of fact. Of course, there are cases where the issue of timeliness "should be postponed, upon appropriate demand by a petitioner, to a determination by the jury as in cases involving private defendants." (*Santee, supra*, 220 Cal.App.3d at p. 712.)

7

*Santee* does not hold that the question *must* be determined in a claim-relief proceeding, only that it *may* be, under the right circumstances. (*Id.* at pp. 711-712.)

No doubt, given the split of appellate authority, a "careful practitioner" would take the belt-and-suspenders approach of both filing a complaint alleging timely filing of a claim and filing a claim-relief petition, as case law and practice guides advise. (*Santee*, *supra*, 220 Cal.App.3d at p. 712, fn. 6; see Haning et al., Cal. Practice Guide: Personal Injury (The Rutter Group 2021) ¶ 5:51.2.) Nevertheless, we do not think the law should trap those who do not do so, as "the claims statute[s] 'should not be applied to snare the unwary where [their] purpose has been satisfied.'" (*Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Authority* (2004) 34 Cal.4th 441, 446 (*Stockett*).)

Relatedly, we make the following observation about the notices that a public entity is statutorily required to send to a claimant whose claim is denied as untimely, or who is denied leave to submit an untimely claim. These notices are correct if the public entity is correct that no timely claim was submitted. But they are simply inaccurate for claimants who actually submitted a timely claim. In such a situation, an application for leave to present a late claim is not such a claimant's "only recourse." (See § 911.3, subd. (a).) If the initial claim was in fact timely, it is not required that such a claimant "first petition the appropriate court" for relief from the claim's presentation requirement before bringing suit. (See § 911.8, subd. (b).) Rather, the claimant could also (or instead) file a complaint alleging that a claim was timely presented to the public entity. (*Santee*, *supra*, 220 Cal.App.3d at p. 712, fn. 6; *Ngo, supra*, 207 Cal.App.3d at pp. 951–952.)

This "trap for the unwary claimant who disputes the public entity's determination of timeliness" (at least under *Ngo* and *Rason*, the side of the caselaw split we reject) has long been recognized by California appellate courts: "For such a claimant, the late claims process is not the 'only recourse;' in fact it is no recourse because the claimant cannot argue timeliness in a section 911.4 application nor in a section 946.6 petition." (*Rason*, *supra*, 201 Cal.App.3d at p. 828.) Even under the side of the caselaw split we follow, the statutorily required notifications could mislead a claimant into failing to raise actual compliance, having been told that the only possible recourse is obtaining the public entity's leave to file a late claim or persuading a court to excuse compliance with the claim requirement. Under *Ngo* and similar cases, a claimant who *does* raise a meritorious actual compliance argument in a section 946.6 petition may nevertheless forfeit the argument by failing to raise it in a civil complaint. We see no good reason to interpret the Government Claims Act in a manner that creates additional traps for the unwary, no matter how well established the procedures that have been developed to avoid them and that are routinely used by sophisticated claimants or those with the benefit of legal counsel.

We conclude, therefore, that where the analysis does not rest on disputed issues of fact better postponed for determination by a jury, "the issue of timely filing of a claim may be determined in a claim-relief proceeding." (*Santee*, *supra*, 220 Cal.App.3d at 711.) And where raised in an appeal from a claim-relief proceeding, after having been "argued . . . fully in the trial court, and submitted . . . to us without reservation or

9

argument that the issue remains pending below," the issue of actual compliance is properly addressed on appeal.[2] (*Id.* at p. 712.) Here, (1) Simms argued in his section 946.6 petition that his May 2018 letter should have been treated as a claim; (2) Bear Valley opposed that argument on the merits and without objection that there were disputed of issues of fact better left for determination by a jury, and (3) the trial court issued an express finding on the merits that the May 2018 letter does not constitute a claim. We turn, then, to the question of whether the trial court's finding was correct.

A claim for personal injury against a public entity, such as Simms's medical malpractice claim, generally must be presented to the public entity "not later than six months after the accrual of the cause of action." (§ 911.2, subd. (a).) "In medical malpractice cases, the action accrues on claimants' actual or constructive discovery of the malpractice." (*Phillips v. Desert Hosp. Dist.* (1989) 49 Cal.3d 699, 705 (*Phillips*); see Code Civ. Proc., § 340.5 [time for commencement of action against health care provider is "three years after the date of injury" or one year after "the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury"].) "'[F]ailure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity.'" (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 738; § 945.4 [with limited exceptions, "no suit for money or damages may be brought against a public entity . . . until a written claim therefor has been presented to

---

[2] We do not here decide what relief, if any, may be available on appeal for a claimant who failed to raise the actual compliance argument in the trial court, whether because they were misled by the statutory notices we discuss above or for other reasons.

the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board"].)

A claim has been presented to the public entity when the public entity "receives a document which contains the information required by section 910 and is signed by the claimant . . . ." (*Phillips*, *supra*, 49 Cal.3d at p. 707; see § 910.2 [signature requirement].) The information required by section 910 includes the "date, place, and other circumstances of the occurrence or transaction which gave rise to the claim asserted" and "[a] general description of the . . . injury, damage or loss incurred so far as it may be known at the time of presentation of the claim." (§ 910, subds. (c), (d).) Where the claimant seeks less than $10,000, the claim must also state "the amount claimed," including an estimate of any prospective damages, "together with the basis of computation of the amount claimed." (*Id.*, subd. (f).) Where the amount sought exceeds $10,000, "no dollar amount shall be included in the claim," but the claim "shall indicate whether the claim would be a limited civil case." (*Ibid.*) "[A] claim need not contain the detail and specificity required of a pleading, but need only 'fairly describe what [the] entity is alleged to have done.'" (*Stockett*, *supra*, 34 Cal.4th at p. 446.) Moreover, "'[w]here there has been an attempt to comply [with the claims statute] but the compliance is defective, the test of substantial compliance controls.'" (*Wood v. Riverside General Hospital* (1994) 25 Cal.App.4th 1113, 1118 (*Wood*).) "Substantial compliance contemplates that there is at least some compliance with all of the statutory

11

requirements." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 769 (*Del Real*).)

Simms's May 2018 letter to Bear Valley is signed, and it was presented to Bear Valley within six months of the alleged injuries, relating to appointments with Bear Valley healthcare providers during the period between December 2017 and April 2018. In other ways, however, it does not substantially comply with the requirements of section 910. The letter describes at some length the acts and omissions of Bear Valley providers that Simms sees as having injured him. But the letter does not comply with section 910, subdivision (f), by providing information about the amount of the claim; the letter neither states a specific dollar amount and how it was calculated, as required for claims of less than $10,000, nor indicates whether the claim would be a limited civil case, as required for claims of more than $10,000. The letter does not even state an immediate demand for a monetary payment. Instead, it demands changes to Simms's medical records and an apology from a doctor, and threatens that *if* his "concerns" were not addressed, he would take them "to a higher level" by "filing a lawsuit for restitution." Thus, the May 2018 letter does not itself satisfy the prerequisites for bringing suit against a public entity.

There is a recognized and important distinction, however, between a claim that is inadequate because it does not substantially comply with the requirements of section 910 and a document that is not a claim at all. "A claim that fails to substantially comply with sections 910 and 910.2 may still be considered a 'claim as presented' if it puts the public entity on notice both that the claimant is attempting to file a valid claim and that litigation

12

will result if the matter is not resolved." (*Del Real*, *supra*, 95 Cal.App.4th at p. 769; see § 910.8 [requirement that public entity give notice "[i]f . . . a claim as presented fails to comply substantially" with statutory requirements].) A "claim as presented" is also sometimes called a "trigger-claim" because its receipt by a public entity "triggers a duty by the public entity to notify the potential claimant of the claim's insufficiency stating, with particularity, the defects or omissions." (*Green v. State Center Community College Dist.* (1995) 34 Cal.App.4th 1348, 1358, 1354 (*Green*); see § 910.8 [requiring notice of insufficiency of claim]; see also § 911.3, subd. (a) [notice requirement for claims returned as untimely].) "If the public entity fails to send this notice, it *waives* any defenses as to the sufficiency of the claim based upon a defect or omission." (*Green*, *supra*, 34 Cal.App.4th at p. 1358; see § 911 [waiver by failure to give notice of insufficiency]; see also § 911.3, subd. (b) [waiver by failure to give notice of untimeliness].) In evaluating whether Simms's May 2018 letter to Bear Valley was a trigger-claim—or instead merely correspondence—we remain mindful that the purpose of the claim "is to give the government entity notice sufficient for it to investigate and evaluate the claim, not to eliminate meritorious actions," so "the claims statute[s] 'should not be applied to snare the unwary where [their] purpose has been satisfied.'" (*Stockett, supra*, 34 Cal.4th at p. 446.)[3]

---

[3] At oral argument, Bear Valley argued that we should defer to the trial court's "reasonable" interpretation of Simms's May 2018 letter as lacking any demand for monetary damages, since the standard of review on a petition for relief from the claim presentation requirement is abuse of discretion. We are not persuaded. The determination of whether Simms's May 2018 letters was a claim or defective claim rather

*[footnote continued on next page]*

Simms's May 2018 letter readily communicated that he felt he had compensable claims for both defamation and medical malpractice against Bear Valley. The letter focuses on the "defamatory" accusation that he was "'lying'" and "'bouncing around from doctor to doctor trying to get drugs.'" Simms complained that a Bear Valley doctor "verbally attacked" Simms by making such statements, and that the label "'drug seeker'" was disseminated to other Bear Valley medical providers and staff by its inclusion in his medical records. The letter also expressed Simms's belief that he was receiving inadequate medical treatment, as to both alleviating his chronic pain and investigating the underlying source of it, and that his doctor had engaged in "gross negligence." The letter expressly threatened litigation if Simms's "concerns" about being "defamed, harassed, *mistreated* and ignored" were not otherwise resolved. (Italics added.) Thus, the May 2018 letter constituted not merely correspondence expressing dissatisfaction, but a claim for injuries arising from medical malpractice and defamation—an incomplete claim, but adequate to trigger Bear Valley's duty to give notice of the insufficiencies, on pain of waiving "[a]ny defense as to the sufficiency of the claim." (§ 911; see § 910.8.)

---

than mere correspondence is not a discretionary judgment call, but rather a question of law, and we need not defer to the trial court's interpretation of the document. (See, e.g., *Phillips v. Desert Hospital Dist.* (1989) 49 Cal.3d 699, 709-711 [discussing legal standard for making determination, which "depends not on a claimant's state of mind but rather on the information imparted to the public entity"].)

Similar reasoning established that a letter in *Foster v. McFadden* (1973) 30 Cal.App.3d 943 (*Foster*) constituted a claim. There, the plaintiff was injured when struck by a bulldozer driven by a sanitation district employee. (*Id.* at p. 945.) At issue was whether a letter, sent by the plaintiff's attorney to the employee with a copy to the district, triggered the notice and defense waiver provisions of sections 910.8 and 911. (*Foster*, supra, at p. 945.) The letter identified the plaintiff by name, stated the date and place of the accident, and asked that the employee forward the letter to his insurance carrier or, if not insured, to promptly "inform the attorney what he wished to do about the matter." (*Ibid.*) The letter "closed with the expressed hope that direct dealing between the parties would avoid the necessity for 'initiating formal proceedings.'" (*Ibid.*) The letter did not substantially comply with the claim presentation requirements, or even use the term "claim"; it told the district of only "an unlabeled and deficient claim by plaintiff against the district for unstated damages for undescribed injuries he allegedly suffered in an identified but undescribed recent accident involving a specified employee of the district." (*Id.* at p. 947.) Nevertheless, despite its deficiencies, the letter "afforded the district the opportunity to make a prompt investigation of the accident," and gave the district "the opportunity to settle without suit, if it so desired." (*Id.* at p. 949.) On that basis, the Court of Appeal held the letter "should be treated as a claim" and reversed a judgment issued due to the failure to comply with the claim presentation requirement. (*Id.* at pp. 949, 945.)

Similarly, Simms's May 2018 letter did not use the term "claim," but told Bear Valley at some length and detail of what Simms perceived as inadequate medical treatment and defamatory statements by Bear Valley providers, and injuries (even if unspecified in amount) that he contended he suffered as a result. The letter definitively stated that litigation will ensue if Simms's complaints were not addressed satisfactorily. Applying *Foster*'s reasoning, this was more than enough to afford Bear Valley the opportunity to investigate and, if it desired, to settle the matter with Simms. Simms's May 2018 letter therefore was, like the letter in *Foster*, a claim sufficient to trigger the notice and defense waiver provisions of sections 910.8 and 911.

In arguing for a different conclusion, Bear Valley focuses on the phrasing of Simms's litigation threat—that he would file "a lawsuit for restitution"—asserting that such a statement does not suggest he contemplated a suit for monetary damages. The trial court agreed. We do not. "'"'Restitution' is an ambiguous term, sometimes referring to the disgorging of something which has been taken and at times referring to compensation for injury done."'" (*People ex rel. Kennedy v. Beaumont Investment, Ltd.* (2003) 111 Cal.App.4th 102, 134.) In the context of Simms's letter, however, there is no ambiguity. Nothing in his letter suggests he might have been demanding the disgorging of something that had been taken from him. On the contrary, the only reasonable way to read Simms's mention of a "lawsuit for restitution" is that he contemplated the possibility of bringing suit to receive compensation for perceived injuries. The compensation

16

provided to plaintiffs who prove claims of defamation or medical malpractice is monetary damages, at least primarily.[4]

As Bear Valley notes, the purpose of the claim requirement is "'to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation.'" (*Stockett*, *supra*, 34 Cal.4th at p. 446.) Bear Valley nevertheless wrongly asserts that there is "nothing in [Simms's May 2018 letter] to settle." On the contrary, the letter is an offer to settle, proposing that in exchange for Bear Valley removing offending statements from Simms's medical records and refraining from further treating Simms in a manner he found objectionable, Simms would refrain from bringing a lawsuit. Certainly, Bear Valley would need more information before it could agree to such a proposal, including investigating Simms's allegations of mistreatment and obtaining more detail about the injuries he contends he suffered. But it is precisely such an investigation and dialogue that the notice and defense waiver provisions of the Government Claims Act are designed to motivate. (See *Phillips*, *supra*, 49 Cal.3d at p. 706 ["This possibility of waiver encourages public entities to investigate claims promptly, and to make and notify claimants of their determinations, thus enabling the claimants to perfect their claims"].)

---

[4] A plaintiff who proves defamation may also receive posttrial injunctive relief, prohibiting the defendant from repeating statements adjudicated to have been defamatory. (See *Balboa Island Village Inn, Inc. v. Lemen* (2007) 40 Cal.4th 1141, 1155-1156.) The compensation for past defamatory statements, however, is money. (See, e.g., *Khawar v. Globe Internat., Inc.* (1998) 19 Cal.4th 254, 274 [discussing proof requirements for recovery of actual, presumed, or punitive damages in defamation actions].)

In contending that Simms's May 2018 letter is not a claim because it "does not make any claim for money damages," Bear Valley relies in part on *Wood*, *supra*, 25 Cal.App.4th 1113. That reliance is misplaced. In *Wood*, the plaintiff's mother (not the plaintiff) submitted to a county hospital's quality assurance department a "'Patient Problem/Complaint'" form and a subsequent "'Supplemental Note,'" which "recit[ed] in great detail numerous items of mistreatment." (*Wood*, *supra*, at pp. 1116-1117.) The Court of Appeal found that these documents did not substantially comply with statutory requirements for claims against the county; they included no express claim of monetary damages, the initial complaint form was not signed (though the "Supplemental Note" was signed by the claimant's mother), and the documents were not sent to the proper county agency for handling claims. (*Id.* at p. 1117.) Bear Valley does not even grapple, however, with comments in *Wood* regarding a hypothetical situation close to the facts of our case: "Arguably, had plaintiff's letters been sent to the appropriate agency for the handling of claims (and, had [they] been transmitted to the persons designated by the statute, [they] presumably would have been) the information supplied would have enabled the agency to make an adequate investigation." (*Id.* at p. 1118.) Bear Valley has not contended that Simms's May 2018 letter was sent to the wrong person or agency, and indeed it was addressed to the same Bear Valley employee as his July 2019 letter, which Bear Valley treated as a claim. Thus, *Wood* does not help Bear Valley here. The holding and reasoning of the case is in concert with our conclusion that Simms's May 2018 letter does not substantially comply with the requirements of section 910, but that, despite its

18

deficiencies, it gave Bear Valley sufficient notice—both of Simms's contentions, and that litigation would result if the matter were not resolved—to trigger the notice and defense waiver provisions of sections 910.8 and 911.

Bear Valley's reliance on *Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071 (*Loehr*) is also misplaced. In *Loehr*, the Court of Appeal found that a letter sent by the plaintiff that expressly threatened litigation nevertheless was not a claim. (*Id.* at p. 1083.) The threatened litigation, however, was apparently for reinstatement to plaintiff's former job, not money damages; the letter made only a passing reference to damages being available under the federal Civil Rights Act, without asserting any claim for damages or detailing facts that might give rise to a claim for damages under that law. (*Id.* at p. 1083.) Moreover, many of the wrongs that the plaintiff contended caused him to suffer damages were not even alleged to have occurred until after that demand letter. (*Ibid.*) This case is different; Simms's May 2018 letter both threatened litigation to seek compensation for his perceived injuries from medical malpractice and defamation and detailed the facts underlying the claims he contemplated asserting.

Further, in treating Simms's July 2019 letter as a claim, Bear Valley apparently interpreted Simms's comments about when he received MRI results—July 18, 2018 and September 13, 2018, according to the July 2019 letter—as assertions of when Simms's medical malpractice claim accrued. In briefing on appeal, Bear Valley continues to do so, arguing for example that "[i]f the first time [Simms] learned of the alleged medical

19

malpractice was not until July 18, 2018, then there is no way the May 13, 2018, letter could be a claim for those injuries." Simms's discovery of the underlying cause of his chronic pain, however, was not the first time he had actual or constructive notice of alleged medical malpractice. (See *Phillips*, *supra*, 49 Cal.3d at p. 705.) Simms's May 2018 letter to Bear Valley demonstrates that he was already aware of what he perceived to be inadequate medical care, from which he was suffering ongoing harm; he was complaining that he had chronic pain that was not being adequately treated by Bear Valley providers, who rather than investigating the source of that pain and providing him with appropriate treatment, jumped to the conclusion that he was merely "drug seeking." As such, when Simms sent Bear Valley his May 2018 letter, a medical malpractice claim had already accrued. (See *Phillips*, *supra*, 49 Cal.3d at p. 705; see also *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110 [under discovery rule of Code Civ. Proc., § 340.5, "the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing"].) The later scan results are evidence in support of Simms's claims, tending to suggest he was telling the truth about his pain, rather than trying to obtain drugs, and that Bear Valley had failed to adequately investigate his condition. The scans may also establish the existence of additional injuries resulting from a delay in diagnosis, which Simms did not necessarily know or suspect in May 2018. But his receipt of the scan results was not the date Simms first discovered he had a medical malpractice claim against Bear Valley.

Having concluded that Simms's claims (or at least some of them) had accrued by May 2018, we must address several timing issues that flow from that conclusion. First, as Bear Valley notes, an application for leave to present a late claim must be presented to the public entity "within a reasonable time not to exceed one year after the accrual of the cause of action." (§ 911.4, subd. (b).) Thus, "[f]iling a late-claim application within one year after the accrual of a cause of action is a jurisdictional prerequisite to a claim-relief petition." (*Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1779.)

Simms's November 2019 claim-relief petition was filed more than one year after the cause of action accrued, so the trial court lacked jurisdiction to relieve him of the section 945.4 requirement for presenting a timely claim. (See §§ 911.4, subd. (b), 946.6, subd. (c) [trial court "shall relieve the petitioner from the requirements of § 945.4" if application was made within a reasonable time not exceeding that specified by § 911.4, subd. (b), and one of listed reasons for failing to file a timely claim applies].) We have found, however, that Simms in fact presented a timely (albeit incomplete) claim in May 2018, and thus did not require relief from the requirements of section 945.4. While the trial court could not relieve him from those requirements, there was no bar, jurisdictional or otherwise, to the trial court finding that he presented a timely claim.

Our next timing issue is that, after a claim has been presented to a public entity, the claimant must still file suit within the applicable statute of limitations period. Simms's filing of his petition does not satisfy this requirement. (See *Orr v. City of Stockton* (2007) 150 Cal.App.4th 622, 632 [petition for late claim-relief does not

21

constitute commencement of a suit]; see § 946.6, subd. (f) [if court grants petition relieving claimant from claims requirements, "suit on the cause of action to which the claim relates shall be filed with the court within 30 days"].)  Rather, "[a] civil lawsuit is generally commenced by the filing of a complaint."  (*Orr*, *supra*, 150 Cal.App.4th at p. 629; see *Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 878 ["The primary attribute of a 'suit,' as that term is *commonly* understood, is that parties to an action are involved in actual court proceedings initiated by the filing of a complaint"].)  Since Bear Valley did not respond to Simms's May 2018 letter, the claim was deemed denied 45 days after it was presented (§ 912.4, subd. (a)), and a limitations period of two years from the accrual of the cause of action applies.  (§ 945.6, subd. (a)(2); compare *id.*, subd. (a)(1) [where written notice is given in accordance with section 913, limitations period is "six months after the date such notice is personally delivered or deposited in the mail"].)  Because Simms's causes of action accrued no later than May 2018, his time to file suit, even under the extended period provided by section 945.6, subdivision (a)(2), normally would have expired by May 2020.

Here, however, there is compelling reason to toll the statute of limitations as of January 10, 2020, when the trial court found that Simms's May 2018 letter was neither a claim nor even a "defective claim."  As we have discussed, prior to that date, Simms could have taken the belt-and-suspenders approach of both filing a complaint alleging compliance with the claim presentation requirements *and* pursuing relief through his

22

section 946.6 petition.[5]  After that date, however, Simms was bound by the trial court's ruling.  His petition had been dismissed, and issue preclusion would have prohibited Simms from raising the issue by filing a complaint as a new case.  (See *DKN Holdings, LLC v. Faerber* (2015) 61 Cal.4th 813, 826-827 [issue preclusion bars "a party who had a full and fair opportunity to litigate the issue in the first case but lost," and therefore "should not be allowed to relitigate the same issue in a new lawsuit"].)  Equity requires that Simms be placed in the position that he would have been had the trial court ruled correctly that the May 2018 letter was a claim, albeit a defective one.  (See *Bollinger v. National Fire Ins. Co.* (1944) 25 Cal.2d 399, 410 [equitably tolling statute of limitations in favor of plaintiff who "through error of the trial court was not allowed to proceed to trial"]; *Paniagua v. Orange County Fire Authority* (2007) 149 Cal.App.4th 83, 88 [time to bring suit on government claim tolled pending appeal from order denying petition for relief from claim filing requirement, reasoning that running of the limitations period should be suspended "'when pending proceedings prevent an effective suit'"]; see also *Rare Coin Galleries, Inc. v. A-Mark Coin Co., Inc.* (1988) 202 Cal.App.3d 330, 336 [equitably tolling limitations period for malicious prosecution action until Court of

---

[5]  It arguably would be equitable to toll the statute of limitations earlier, as of the misleading notices Simms received about his options after his claim was denied as untimely and his application to present a late claim was denied.  Nevertheless, even upon receiving the misleading section 911.3 notice, and the similarly misleading section 911.8 notice, Simms could still have performed the modicum of legal research necessary to discover that filing a complaint alleging compliance with the Government Claims Act was in fact an option.  And in California we have consistently held self-represented litigants are held to the same standard of knowledge of law and procedure as an attorney.  (E.g., *Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276, 1284.)

Appeal issues its remittitur].)  As best as we can determine, at least a substantial portion of Simms's allegations against Bear Valley are based on events that occurred less than two years before the trial court's January 10, 2020 ruling, so with tolling applied, it appears that he could file a complaint that would not be time barred.[6]

In sum, the trial court erred by finding that Simms's May 2018 letter to Bear Valley did not constitute either a claim or a defective claim.  We find that it was in fact a defective claim, triggering Bear Valley's duty to notify Simms of its insufficiencies. (§ 910.8.)  By failing to do so, Bear Valley waived any defenses based on the claim's insufficiencies (§ 911), and the claim was deemed denied by statute (§ 912.4, subd. (a)). Simms has two years from the date his causes of action accrued to bring suit by filing a complaint, but that limitations period is tolled from January 10, 2020 (the date of the trial court's erroneous ruling) through the issuance of our remittitur in this appeal.

---

[6] We need not decide whether any of Simms's causes of action accrued earlier than May 2018.  It is conceivable that some portion of them accrued when he verbally complained to Bear Valley in December 2017 and January 2018.  In opposing any complaint that Simms may file, Bear Valley may raise such statute of limitations arguments for determination by the trial court or by a jury, as appropriate.

## DISPOSITION

The judgment is reversed.  The trial court is directed to (1) vacate its January 10, 2020 order denying Simms's petition and dismissing the case, and (2) to enter a new order denying Simms's request for relief from the requirements of section 945.4 without prejudice to Simms filing a complaint and proceeding with a lawsuit against Bear Valley. Simms is awarded costs on appeal.

CERTIFIED FOR PUBLICATION

RAPHAEL_____
J.

We concur:

CODRINGTON_____
Acting P. J.

MENETREZ_____
J.

25